*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0165P (6th Cir.)
File Name: 00a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PHILIP R. PLANT,
    *Plaintiff-Appellant,*

    *v.*                         No. 99-3445

MORTON INTERNATIONAL,
INC.,
    *Defendant-Appellee.*



Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-03234—Donald C. Nugent, District Judge.

Argued: February 4, 2000

Decided and Filed: May 12, 2000

Before: MERRITT and MOORE, Circuit Judges;
HEYBURN,[*] District Judge.

---

[*]The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

---

**COUNSEL**

**ARGUED:** Charles A. Kennedy, KENNEDY, CICCONETTI & KNOWLTON, Wooster, Ohio, for Appellant. Timothy L. Zix, BATTLE & MILLER, Cleveland, Ohio, for Appellee. **ON BRIEF:** Charles A. Kennedy, KENNEDY, CICCONETTI & KNOWLTON, Wooster, Ohio, for Appellant. Timothy L. Zix, Colleen P. Battle, BATTLE & MILLER, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Philip Plant appeals the district court's grant of summary judgment to his former employer Morton International, Inc. ("Morton") on his Family and Medical Leave Act (FMLA), Americans with Disabilities Act (ADA), and state-law discrimination and wrongful termination claims. The district court found that, because Plant could not have returned to work within the twelve weeks allotted by the FMLA, he could not make out a successful claim under that statute. Concluding that Morton failed to give sufficient notice to Plant that his FMLA leave time had begun to run, we disagree with the district court and hold that Plant might have been entitled to an additional twelve weeks of leave under the FMLA. However, we agree with the district court that Plant has come forward with insufficient evidence to allow a reasonable jury to conclude that he was disabled within the meaning of the relevant statutes during the time period in question, and therefore that Morton was entitled to summary judgment on the ADA and state-law claims. For these reasons, we **AFFIRM** in part and **REVERSE** in part the judgment of the district court, and we **REMAND** for further proceedings.

## I. BACKGROUND

Plaintiff-appellant Philip R. Plant began working for defendant-appellee Morton International, Inc. as an applied color systems operator in the Orrville, Ohio plant in 1989. He was an hourly employee whose duties mainly involved generating paint color matches. In February of 1995, Plant was promoted to the position of intermix coordinator, which was a salaried position involving additional responsibilities such as research and development and customer service, including travel to remote customer sites. That same month, Plant was involved in a motor vehicle accident while working at a site in North Carolina. Plant was taken to a local hospital, diagnosed with contusions and strain, and released the same day. His diagnosis has never changed.

Plant followed up with treatment from Dr. Owen W. Logee, M.D., of Wooster, Ohio. Except for being called in to work sporadically when he was especially needed, Plant was absent from work until September of 1995, when Dr. Logee released him to return with the restriction that he should work only four-hour days and avoid lifting more than fifteen pounds and bending or stooping repeatedly. Plant was eventually released to work six-hour days and then eight-hour days. During his entire absence from work, Plant continued to receive his full salary.

To accommodate Plant's medical condition, Morton assigned him to data entry duties upon his return. Plant claimed that he was no longer able to drive to customer sites, as he had previously done as intermix coordinator, due to the pain medication he had to take; he did, however, maintain some phone contact with customers. Furthermore, Plant could not fully perform the duties of his previous position as intermix coordinator without working eight-hour days. Eventually, Plant began to find that his back condition was aggravated by sitting for long periods at his data entry job. Shortly thereafter, Plant was switched to the position of lab technician, which required mostly standing, with the possibility of sitting to take breaks. The job also required

some bending, walking, occasional light lifting and stair climbing. Plant does not claim that these duties were outside his work restrictions, but he states that he was made to feel uncomfortable when taking breaks or asking for help from his co-workers, which he occasionally needed to do. For example, he asserts that he was constantly "scrutinized" while taking breaks and that one of the supervisors, Dave Black, told Plant that the president of Morton did not want him sitting down so much or taking his breaks in the front office. Plant also states that, although he was told he could ask his co-workers to help him with carrying paint samples, they sometimes failed to comply with his requests, and he was consequently told to carry them himself if he could. Finally, Plant notes one incident in which Dave Black allegedly expressed the opinion that Plant was "milking the system." J.A. at 395 (Plant Dep.). Black denies ever making such a comment.

On April 26, 1996, Plant aggravated his back and leg injuries while carrying paint samples up a flight of stairs at work. At Dr. Logee's direction, Plant took another leave of absence from work. As in the past, Plant did not fill out any forms or follow any other special procedures to request that leave of absence, and he continued to receive his full salary. On June 7, 1996, while still on a leave of absence for his medical problems, Plant was terminated. He claims that he was told that the reason for his termination was that Morton needed someone who could be present more than he could. He claims that he was never told of any problems concerning his performance at that meeting and only learned of his alleged poor performance when he attempted to apply for unemployment benefits.

Morton, by contrast, claims that Plant was terminated for no other reason than his poor performance and that he was never told otherwise. In particular, Morton points to Plant's alleged inappropriate behavior with some employees of a customer, Springs Window Fashions ("Springs"). David Mead, an account manager/sales representative from Morton, described one incident in which Plant engaged in a heated discussion

310 syllabus para. 3. However, the court emphasized that its reasons for so holding depended on its understanding of the legislature's intent in enacting the whistleblower statute; the court did not claim to generalize to other public policies or other statutes. *See id.* at 322-23. Generally, in order to succeed on a wrongful discharge claim, the plaintiff must show only that a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; that "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; that "[t]he plaintiff's dismissal was motivated by conduct related to the public policy"; and that "[t]he employer lacked overriding legitimate business justification for the dismissal." *Id.* at 321 (quoting *Painter v. Graley*, 639 N.E.2d 51, 57 n.8 (Ohio 1994)).

Nonetheless, the district court reached the correct conclusion with respect to Plant's wrongful discharge claim. As we have noted, Plant has not come forward with sufficient evidence to show that he qualifies as disabled within the meaning of § 4112.02 or the ADA. Although Plant is not required to prove all the elements of an ADA claim or a § 4112.02 claim in order to succeed on a claim for wrongful discharge in violation of public policy, we believe that unless Plant can show that he is a member of the class of people who are the intended beneficiaries of those statutes, he cannot show that "dismissing employees under circumstances like those involved in [Plant's] dismissal would jeopardize the public policy" embodied in those statutes. Therefore, we affirm the district court's grant of summary judgment to Morton on the wrongful discharge claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the district court's grant of summary judgment to Morton, and we **REMAND** for further proceedings consistent with this opinion.

appropriate to look to federal law when interpreting analogous law under R.C. Chapter 4412."). *But cf. Wooten v. City of Columbus*, 632 N.E.2d 605, 611 (Ohio Ct. App. 1993) (stating that the Ohio handicap discrimination law is "at least as broad, *if not broader*, in scope than" the ADA (emphasis added)). Furthermore, the parties have pointed to no differences between Ohio case law and federal case law that would be relevant to this case. Therefore, we hold that Plant is not handicapped within the meaning of Ohio Revised Code § 4112 for the same reasons that we held him not to be disabled within the meaning of the ADA. *See also Maloney v. Barberton Citizens Hosp.*, 672 N.E.2d 223, 225 (Ohio Ct. App. 1996) (stating that the plaintiff's "transitory" back injury, "which caused her pain and inconvenience for a definite period of time, but which had no adverse residual effects," does not constitute a "handicap" under § 4112).

## E. The Wrongful Discharge Claim

Finally, Plant argues that Morton's actions constitute wrongful discharge in violation of public policy under Ohio law. *See Greeley v. Miami Valley Maintenance Contractors, Inc.*, 551 N.E.2d 981, 981-82 syllabus para. 2 (Ohio 1990). This claim is apparently dependent upon Plant's § 4112.02 claim, since he points to § 4112.02 as embodying the public policy that was violated by his discharge. The district court found that in order to succeed on a claim for wrongful discharge in violation of the policy embodied in § 4112.02, Plant must be able to meet the requirements for showing a violation of § 4112.02.

We do not believe that Plant was required to show all the elements of a violation of § 4112.02 in order to succeed on a claim for wrongful termination in violation of public policy. In *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308 (Ohio), *cert. denied*, 522 U.S. 1008 (1997), the Supreme Court of Ohio held that the plaintiff's claim for wrongful discharge in violation of the state whistleblower statute would succeed only so long as he could show that he had fully complied with the requirements of the whistleblower statute itself, *see id.* at

with an employee on the floor of the Springs factory. According to Mead's affidavit, Plant later explained "that he had a friendly relationship with the employee's sister, but that she believed he was leading her sister on because he was married." J.A. at 82 (Mead Aff.). Mead states that Plant then asked him to drive to a local department store, where they met the sister of the Springs employee. Plant admits to these events, which occurred in March of 1995, while Plant was still on a leave of absence but sporadically working, but he claims that the encounter at the department store was coincidental. Mead also reports having received complaints about Plant from Lloyd Nugent, the quality control manager at Springs, both about Plant's socializing with Springs employees and about his technical capabilities. Subsequently, in May of 1996, Nugent complained again to Mead, telling him that Plant was calling Springs employees during business hours and suggesting that Morton's relationship with Springs was jeopardized by this behavior. Plant was terminated several days after this last complaint. Plant denies that he called any Springs employees during business hours and asserts that, although Mead had briefly advised him not to mix his personal life with his business, he was unaware of any problems that Springs had with him. Black admitted that he did not recall having a meeting with Plant about that incident and that he was unaware of anyone within the company having a conversation with Plant about it.

Morton also points to two negative performance appraisals of Plant written by Plant's immediate supervisor, Bill Jones. Although those reviews are not dated, an affidavit by Human Resources Representative Eileen Christiansen, as well as Black's testimony, suggests that they were completed in 1996. One review described Plant as "Below Expectations" overall and the other as "Unacceptable." J.A. at 102, 105 (Performance Appraisals). Both were accompanied by summaries signed by Bill Jones referring to Plant's "lack of knowledge in colorant data base systems" and his "inappropriate behavior," among other things, and recommending his termination. J.A. at 104, 107. Black admitted that he believed that the performance reviews were

never shared with Plant, however. Jones also wrote a letter to the Human Resources department immediately after the second Springs incident, which described Plant's poor performance in very similar terms. However, Jones, who was later terminated as well, wrote a letter subsequent to his termination, stating that he impugned Plant's performance largely under pressure from his superiors and out of fear for his own employment. Finally, Morton points to memoranda written by Black in the fall of 1995 describing several problems with Plant's behavior, such as being absent from work without notifying anyone and personal use of the company phones and fax machines.

After receiving a "Right to Sue" notice from the Ohio Civil Rights Commission and the EEOC, Plant filed suit against Morton in state court, alleging discrimination in employment on the basis of his disability in violation of the FMLA, 29 U.S.C. § 2601 *et seq.*, the ADA, 42 U.S.C. § 12101 *et seq.*, Ohio Revised Code § 4112.02, and the state wrongful discharge laws. Morton removed the case to the federal district court for the Northern District of Ohio. Morton moved for summary judgment, which was granted as to all of Plant's claims. This timely appeal followed.

## II. ANALYSIS

### A. Summary Judgment Standard

This court reviews a district court's grant of summary judgment de novo. *See EEOC v. Northwest Airlines, Inc.*, 188 F.3d 695, 701 (6th Cir. 1999). Summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Johnson v. United States Postal Serv.*, 64 F.3d 233, 236 (6th Cir. 1995). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). There is no genuine

of Plant's medical restrictions and modified Plant's responsibilities based on them.

Because we hold that Plant was not disabled within the meaning of the ADA and affirm the district court on this basis, we do not reach the questions whether Plant was "otherwise qualified" for the position of intermix coordinator and whether Morton has put forth a legitimate, non-pretextual reason for terminating Plant.

### D. The Ohio Revised Code § 4112.02 Claim

In order to establish unlawful discrimination on the basis of disability in violation of Ohio Revised Code § 4112.02(A),[3] Plant must show 1) that he is handicapped; 2) that Morton took adverse action against him because of his handicap; and 3) that he is capable of performing the essential functions of the job in question. *See Hazlett v. Martin Chevrolet, Inc.*, 496 N.E.2d 478, 480 (Ohio 1986). The district court granted summary judgment for Morton on Plant's § 4112.02 claim, finding that it could apply the same analysis to that state law claim as it had applied to the ADA claim.

Ohio case law appears to support the district court's decision. *See, e.g., City of Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998) (noting that the ADA is similar to the Ohio handicap discrimination law and looking to federal law in order to determine whether nearsightedness is a disability under § 4112); *Greater Cleveland Reg'l Transit Auth. v. Ohio Civil Rights Comm'n*, 567 N.E.2d 1325, 1328 (Ohio Ct. App. 1989) ("It is

---

[3]Section 4112.02 provides:
It shall be an unlawful discriminatory practice:
(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
OHIO REV. CODE § 4112.02.

his termination on June 6, 1996. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (stating that a court may consider the plausibility of a moving party's evidence in determining whether that party has met its burden for summary judgment); *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir. 1997). Furthermore, temporary physical conditions like Plant's do not generally constitute substantial impairments. *See* Interpretive Guidance, 29 C.F.R. §1630.2(j) App.; *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996). Although the evidence did not clearly indicate that Plant's condition was temporary, Plant was unable to come forward with any evidence that it was permanent, and the mere possibility of recurrence is not sufficient to establish substantial impairment. *See Roush*, 96 F.3d at 844. For these reasons, we hold that Plant has failed to produce sufficient evidence from which a reasonable jury could conclude that he was disabled within the meaning of the ADA during the time in question.

Furthermore, we reject Plant's contention that he was "regarded as" disabled within the meaning of 42 U.S.C. § 12102(2). Plant has come forward with no evidence to show that he fits within this definition of disabled, other than to suggest that because Morton made accommodations for Plant's medical restrictions, it viewed him as disabled. This is clearly not the kind of situation to which the statutory provision for those who are "regarded as" disabled was intended to refer. Rather, the EEOC regulations explain that this definition of disability applies when the employee has an impairment that is not substantially limiting but is treated as substantially limiting, or when the impairment is limiting only because of others' attitudes, or when the employee has no impairment at all but is viewed as having a substantially limiting impairment by the employer. *See* 29 C.F.R. § 1630.2(l). The intent behind this provision, according to the EEOC, is to reach those cases in which "myths, fears and stereotypes" affect the employer's treatment of an individual. 29 C.F.R. § 1630.2(l) App. Plant cannot show that this provision applies to him merely by pointing to that portion of the record in which his supervisor admitted that he was aware

issue for trial unless the nonmoving party has produced enough evidence for a jury to be able to return a verdict for that party. *See id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## B.  The FMLA Claim

The FMLA provides that an eligible employee is entitled to twelve weeks of leave from work for a "serious health condition" that renders the employee incapable of fulfilling that employee's job responsibilities. 29 U.S.C. § 2612(a)(1)(D). An employer who interferes with an employee's rights under the FMLA may be held liable in a civil suit. *See* 29 U.S.C. § 2617; *Miller v. Defiance Metal Prods., Inc.*, 989 F. Supp. 945, 946 (N.D. Ohio 1997).

Plant argues that Morton interfered with his rights under the FMLA. He claims that after his April 26, 1996 injury, he qualified as having a serious health condition that prevented him from performing the essential functions of his position. Therefore, he argues, he was entitled to twelve weeks' leave under the FMLA, but he was terminated after only about six weeks. Furthermore, although Plant admits that he would not have been able to return to work within twelve weeks in any case, he argues that he should have been allowed to "stack" the FMLA leave on top of his employer-provided temporary disability leave. In any case, he adds, his FMLA leave allotment would not start to run until Morton notified him that it was designating his leave as FMLA leave, which it never did. *See* 29 C.F.R. § 825.208(c) (1998).

Relying on Sixth Circuit precedent, the district court rejected Plant's arguments. In *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775 (6th Cir. 1998), this court held that the plaintiff could not show a violation of her rights under the FMLA, even if her employer had terminated her before she had used her entire twelve-week allotment of leave, because she was undisputably unable to return to work within twelve weeks in any case. *See id.* at 784-85. Because Plant similarly would not have been able to

return to work until August 5, 1996, the district court found that *Cehrs* was directly on point and Plant could not show a violation of the FMLA.

We hold that *Cehrs* is not applicable to this case. Although the *Cehrs* court appeared squarely to hold that an employee who cannot return to work within twelve weeks has no remedy under the FMLA, it did not specifically consider the problem presented in this case — that of notice by the employer that the employee's leave is being counted against his FMLA allotment. Because there is a Department of Labor regulation, 29 C.F.R. § 825.208(c), that specifically discusses the requirement of notice by employers, and because we believe that regulation to be valid, we hold that § 825.208(c), rather than *Cehrs*, governs the case sub judice.

The FMLA makes it clear that employer-provided leave, whether paid or unpaid, may be counted toward the twelve-week minimum required by the statute. *See* 29 U.S.C. § 2612(c)-(d). The Department of Labor's regulations implementing the FMLA, which became final on April 6, 1995, *see Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1111 n.1 (6th Cir. 1997), elaborate on the circumstances and conditions under which this may be done. In particular, 29 C.F.R. § 825.208(a) emphasizes that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee." 29 C.F.R. § 825.208(a). Furthermore, the regulations provide that an employer wishing to count paid leave against the twelve-week minimum must so inform the employee within two days of learning of the employee's FMLA-qualifying reason for requesting leave. *See id.* § 825.208(b). If the employer fails to give notice to the employee within this period of time, the employer may not designate the leave as FMLA leave retrospectively; only that portion of the leave following notification by the employer may be designated as FMLA leave and counted against the twelve-week entitlement. *See id.* § 825.208(c).

evidence to raise an issue of fact as to whether Morton's nondiscriminatory explanation for Plant's termination was pretextual.

We hold that Plant has not produced sufficient evidence from which a factfinder could conclude that he was disabled. The definition of "physical or mental impairment" under the ADA clearly includes Plant's musculoskeletal condition of knee contusions and back strain, *see* 29 C.F.R. § 1630.2(h)(1) (1999), and the term "major life activity" includes many of those activities described by the plaintiff: the EEOC regulations and the appendix to those regulations identify walking, performing manual tasks, working, standing, and lifting as major life activities, *see* 29 C.F.R. §1630.2(i); Interpretive Guidance 29 C.F.R. §1630.2(i) App. However, Plant has not made a sufficient showing that his impairment substantially limited his ability to perform those major life activities. In his deposition, Plant stated that he was, at the time of the deposition, injured to the point that he believed himself completely unable to work, unable to sit for more than three to five minutes, unable to drive on a daily basis, and unable to lift, bend, or stoop without severe pain. Initially, Plant stated that he suffered those same impairments, "on and off," during the time he was employed by Morton. J.A. at 478-80 (Plant Dep.). Later, however, Plant agreed that he was attributing his current inability to work to injuries that resulted from yet another automobile accident, which occurred nine months after he was terminated by Morton, in April of 1997. Furthermore, Plant admitted that he worked sporadically after his termination, from approximately November of 1996 to April of 1997, at a job that involved traveling to Pennsylvania once a week, installing computers, and training customers to use their computers. Finally, Plant admitted that he was never told by a physician that his impairment was permanent; nor was he told, however, that it was temporary.

Plant's self-contradictory and logically suspect testimony is simply not sufficient to support a jury finding that he was disabled during the period at issue here, from April 26 until

(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). In his brief, Plant claims that he is disabled, because his ability to walk and to stand were severely limited by his injuries. Based on the evidence presented by Plant, it appears that he also considers himself substantially restricted in the activities of bending, stooping, running, exercising, and driving. Plant also argues that he was "regarded as" disabled by Morton, and that this fact is evidenced by Morton's attempts to accommodate his medical restrictions. Furthermore, Plant contends that he was qualified for the position of intermix coordinator with certain reasonable accommodations. Finally, since Morton has not disputed that it knew of Plant's medical problems, terminated him, and either replaced him or left his position open while seeking other applicants, Plant argues that he has made out a prima facie case of discrimination. Although Morton claims that Plant was terminated for poor job performance, Plant urges that he has presented enough evidence to raise a genuine issue of material fact with respect to Morton's proffered explanation, pointing to Dave Black's alleged statement that Plant was being terminated due to his absences and to Bill Jones's recantation of his negative appraisal of Plant.

The district court found that Plant failed to establish that he was disabled, because Plant's "unsupported testimony" did not demonstrate that his injury was sufficiently severe to limit substantially his ability to perform a major life activity. It further found that Morton's attempts to accommodate Plant's restrictions were not sufficient to demonstrate that Morton regarded Plant as disabled. Moreover, the district court concluded that even if Plant were disabled, he was not "otherwise qualified" for the position of intermix coordinator, because by his own admission he could not perform the essential functions of the job, such as traveling to customer locations. Finally, the district court stated that even assuming, *arguendo*, that Plant made out a prima facie case of discrimination, he did not come forward with sufficient

The *Cehrs* court did not directly address these regulations, nor is it apparent from reading that decision whether the employer had given notice to the plaintiff that her absences would be counted as FMLA leave. Furthermore, the employee in *Cehrs* had taken unpaid leave rather than paid leave, *see Cehrs*, 155 F.3d at 779; therefore, the court had no occasion to address § 825.208(c), which appears to govern only those cases in which an employer wishes to designate paid leave as FMLA leave.[1] Because it is undisputed in this case that Plant received his full salary during his second absence from work, and because it is undisputed that Morton never informed Plant that it was counting his paid absence against the statutory FMLA allowance, *Cehrs* is inapplicable to this case. Furthermore, the record contains uncontroverted evidence that, although Plant did not specifically report to his employer the re-injury of his back that occurred on April 26, 1996, Morton did receive a notice from Plant's doctor, dated May 6, 1996, excusing Plant from work due to a "[f]lare up [of his] lumbar/back problem." J.A. at 99 (Slip from Dr. Owen Logee). The FMLA regulations make it clear that, in such a situation, if the employer feels it does not have sufficient information to determine whether the employee's reasons for requesting leave are encompassed by the FMLA, "the employer should inquire further of the employee . . . to ascertain whether the paid leave is potentially FMLA-qualifying." 29 C.F.R. § 825.208(a). The employee need not invoke the FMLA by name in requesting leave for an FMLA-qualifying reason. *See id.* § 825.208(a)(2).

We see no reason why § 825.208(c) should not be considered valid and applicable to this case. In the absence of

---

[1] We note that 29 C.F.R. §§ 825.301(b)-(c) and 825.700(a) prescribe almost identical notice rules when employers wish to designate unpaid leave as FMLA leave. However, the interim regulations, which applied to the parties in *Cehrs*, did not contain the same notice requirements for designating unpaid leave as FMLA leave, nor did they explicitly state that the failure to designate unpaid leave as FMLA leave stops the clock from running on the employee's 12-week entitlement. *See* 29 C.F.R. §§ 825.301, 825.700(a) (1994) (interim regulations).

specific statutory language governing a topic, agency regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). The FMLA itself is silent as to the notice an employer must give to an employee before designating his paid leave as FMLA leave. We believe that § 825.208(c) evinces a reasonable understanding of the FMLA, reflecting Congress's concern with providing ample notice to employees of their rights under the statute. *See* 29 U.S.C. § 2619(a). Moreover, because the FMLA was intended to set out *minimum* labor standards, we do not believe that § 825.208(c) is inconsistent with legislative intent merely because it creates the possibility that employees could end up receiving more than twelve weeks of leave in one twelve-month period, due to an employer's failure to notify them that the clock has started to run on their allotted period of leave. *See* S. REP. NO. 103-3, at 4-5 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 6-7. We therefore disagree with *McGregor v. Autozone, Inc.*, 180 F.3d 1305 (11th Cir. 1999), and *Covey v. Methodist Hospital of Dyersburg, Inc.*, 56 F. Supp. 2d 965 (W.D. Tenn. 1999), which held that §§ 825.208(c) and 825.700(a) were in conflict with the FMLA's creation of a narrow entitlement to twelve weeks of leave and therefore invalid. *See McGregor*, 180 F.3d at 1308; *Covey*, 56 F. Supp. 2d at 969-70. Rather, we conclude that those regulations are valid and forbid employers from retroactively designating FMLA leave if they have not given proper notice to their employees that their statutory entitlement period has begun to run.[2] *Accord Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 300-01 (4th Cir. 1998); *Ritchie v. Grand Casinos of Mississippi, Inc.*, 49 F. Supp. 2d 878, 880-81 (S.D. Miss. 1999).

Having determined that, since his FMLA leave had not yet started to run, Plant is not precluded from asserting an FMLA

---

[2]We note that this holding renders it unnecessary for us to address Plant's "stacking" argument, which appears to be a variation of his argument pertaining to the notice requirements.

claim due to the fact that he would have been unable to return to work within a twelve-week period, we nonetheless must consider whether Plant has demonstrated the other elements of an FMLA claim. In particular, Plant is entitled to twelve weeks of leave under the FMLA for his medical problems only if he can show that he had a "serious health condition" which rendered him "unable to perform the functions of" his position. 29 U.S.C. § 2612(a)(1)(D); *see Miller*, 989 F. Supp. at 946. According to the regulations, a serious health condition must involve either inpatient care or continuing treatment by a health care provider. *See* 29 C.F.R. § 825.114(a). Because the district court decided this case on other grounds, it did not consider whether Plant's medical problems met the definition of a serious health condition under the statute and its implementing regulations. We therefore remand for that court to determine whether Plant has successfully made out the elements of an FMLA claim.

## C.  The ADA Claim

In order to establish a prima facie case of discrimination under the ADA, Plant must show 1) that he is disabled; 2) that he is otherwise qualified for his previous position with Morton, with or without reasonable accommodation; 3) that he suffered an adverse employment decision; 4) that Morton knew or had reason to know of his disability; and 5) that he was replaced or that his position remained open while Morton looked for other applicants. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). If he succeeds, the burden shifts to Morton to provide a non-discriminatory explanation for its actions. *See id.* If Morton satisfies its burden, Plant must then come forward with evidence demonstrating that Morton's proffered explanation is pretextual. *See id.* At all times, Plant retains the ultimate burden of persuasion. *See id.* at 1186-87.

A "disability" under the ADA is defined as

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;