RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0370p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

KAREN F. PELTIER,

        *Plaintiff-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

        *Defendant-Appellee.*

No. 03-3623

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 00-07432—James G. Carr, District Judge.

Argued: August 12, 2004

Decided and Filed: October 28, 2004

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Joel J. Kirkpatrick, KIRKPATRICK LAW OFFICES, Toledo, Ohio, for Appellant. Lawrence J. Kiroff, UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. **ON BRIEF:** Joel J. Kirkpatrick, KIRKPATRICK LAW OFFICES, Toledo, Ohio, for Appellant. Lawrence J. Kiroff, UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee.

_____

### OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Karen F. Peltier appeals the district court's award of summary judgment in favor of the United States on her claims of gender and disability discrimination brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e). For the reasons that follow, we AFFIRM.

### I.

In 1990, Peltier began working in the Toledo, Ohio, office of the Bureau of Alcohol, Tobacco and Firearms as an "Investigative Assistant," in which capacity she performed secretarial and clerical tasks. In 1992, she and other employees in the Toledo office began complaining to agency officials about hostile working conditions in that office, which they felt were caused principally by one particular female agent.

In 1996, Peltier unsuccessfully applied for an open "Inspector" position in the agency's Cleveland-area office, which is located in Middleburg, Ohio. Her application mentioned nothing about the alleged

hostile work environment in the Toledo office. She and two other applicants interviewed for the Inspector position, but none was hired. Peltier made no written complaint about the agency's failure to appoint her to this position. Around the same time as Peltier's unsuccessful application, three male agents in the Toledo office filed formal discrimination complaints concerning the work environment in that office. In connection with their complaints, the three agents requested to be transferred to vacant positions in different offices, and the agency granted their requests. Peltier claims that the agency's failure to appoint her to the Cleveland position, while permitting the male agents' transfers, constitutes gender discrimination.

Peltier also complains about an internal agency investigation that focused primarily upon her. The internal investigation arose out of events beginning in April 1997, when the agency began investigating an apparent homicide in which the victim's husband was a prime suspect. The agent in charge of this criminal investigation was the very agent whom Peltier, and others, had complained about as the cause of the hostile work environment in the Toledo office. This agent had Peltier fax to the Cleveland office sensitive materials containing the agency's "operational plan" for executing a warrant to search the suspect's residence. Peltier also made reservations at the Ramada Inn for two agents who were to provide expert forensic assistance following the search. Subsequently, and without Peltier's knowledge, the agents' reservations were changed to a different hotel.

When agents executed the search warrant at the suspect's residence, they discovered a paper napkin on the kitchen table with handwriting that appeared to be that of the suspect. Notations on the napkin included "S.W.," "Ramada" and "12:00" (the time at which the search was to be conducted). The search failed to uncover some of the items that the agents had anticipated finding, and the condition of the premises suggested that items may have been removed prior to the search. Those facts caused the agency to suspect that someone had "tipped off" the suspect that the search was to occur. Primary suspicion focused upon Peltier because of her unique exposure to the sensitive information concerning the search. The agency also suspected that a male agent, with whom Peltier was personally acquainted and who had also complained about the work environment in the Toledo office, might have acted as Peltier's co-conspirator. Their motive, the agency surmised, was to sabotage the work of the agent in charge of the criminal investigation in retaliation for her alleged role in creating the hostile work environment.

The agency began an internal investigation of Peltier and the male agent. Peltier was asked to take a polygraph test, which she did, and the examiner concluded that her answers to two critical questions were deceptive. Peltier was then placed on paid administrative leave pending the outcome of the investigation, which led to the institution of grand jury proceedings. Eventually, however, the agency discovered an innocent explanation for the suspect's notes. Consequently, the agency halted the investigation and legal proceedings, and cleared Peltier and the male agent of any wrongdoing.

Peltier filed a discrimination complaint with the agency, alleging that she was subjected to the internal investigation in retaliation for complaining about the conditions in the Toledo office. The agency found no probable cause for her claim, and the Equal Employment Opportunity Commission affirmed. In the instant lawsuit, Peltier alleges that the agency discriminated against her on account of her gender by investigating her and subjecting her to more intense scrutiny than the male agent.

Apparently as a result of the hostile work environment and the investigation, Peltier was treated for stress and depression. After she was cleared of any wrongdoing, Peltier was reinstated and instructed to return to work in the Toledo office effective September 22, 1997. Peltier refused to return to work, however, claiming that her psychological condition prevented her from working in the Toledo office. She requested a transfer to the Cleveland office, but that request was denied. When Peltier persisted in her refusal to return to work in the Toledo office, the agency terminated her employment. The male agent who was investigated along with Peltier requested, and received, a transfer to the Detroit office, which had a vacancy in the same position that he had held in Toledo. Peltier alleges that by failing to accommodate her request for a transfer to the Cleveland office, while granting the male agent's transfer, the agency discriminated against her on account of her disability.

Peltier challenged her termination, but an administrative law judge found it proper and the Merit Systems Protection Board affirmed.  Peltier then filed the instant lawsuit.  After discovery had taken place, the United States filed a motion for summary judgment, which the district court granted.  This appeal followed.

## II.

We review de novo the district court's award of summary judgment on Peltier's discrimination claims.  *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On appeal, we consider all facts and inferences drawn therefrom in the light most favorable to Peltier, the nonmoving party.  *Talley*, 61 F.3d at 1245 (citations omitted).

### A.  *Gender Discrimination Claim*

Peltier bears the initial burden of establishing a prima facie case of gender discrimination.  *Id.*  Because she has no direct evidence of discrimination, Peltier must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably.  *Id.*  In her attempt to satisfy the fourth element, Peltier alleges that similarly situated male employees were treated more favorably than she was.  Peltier may make this comparison only if the male employees that she has identified are "similarly situated in all respects" to her.  *Gragg v. Somerset Tech. College*, 373 F.3d 763, 768 (6th Cir. 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

### 1.  *1996 Application*

With regard to Peltier's first allegation of gender discrimination, the agency's rejection of her 1996 application for the Inspector position in the Cleveland office, the district court held that Peltier had failed to establish that similarly situated male employees were treated more favorably than she was.  According to the court, Peltier "was not treated in a disparate manner" from the male agents who requested and received transfers because:

> [Peltier] failed to inform the agency that the working conditions in Toledo motivated her application.  The position she sought, moreover, was at a higher grade level.  She, like two other female applicants, was not hired following interviews. . . .  Most importantly, the circumstances of the male agents and the plaintiff were not equivalent.  The males each sought a transfer, not appointment to a new position.  They, unlike plaintiff, based their requests directly on the conditions in the Toledo office.  They were transferred to open positions, while plaintiff competed for a position at a higher grade level.  Plaintiff has not shown that the person appointed to that position was male, or that her qualifications were comparable.

Peltier contends that the position for which she applied was not, as the district court stated, at a higher pay-grade level and, therefore, was not a promotion.  According to Peltier, her pay-grade level at the Toledo office was "7 or 8" and the Inspector position for which she applied in the Cleveland office was a "5/7/9/11 inspector position."  Regardless of this apparent discrepancy, the other distinctions identified by the district court support its conclusion that the male agents were not similarly situated to Peltier.  In particular, we are persuaded by the fact that the male agents' applications for transfer were expressly predicated upon their complaints about the environment in the Toledo office, whereas Peltier's application for the Inspector position in Cleveland mentioned nothing about the Toledo work environment.  Peltier asserts in response that agency officials were well aware of her dissatisfaction with the Toledo work

environment, in part because she had filed a complaint about it in 1992. Even if true, however, that is not enough to render her similarly situated to the male agents. The fact that Peltier had complained in the past did nothing to put the agency on notice that her application for the Inspector position in Cleveland was motivated by her past complaints about, or present discomfort with, the Toledo work environment. Therefore, the fact that the male agents' transfer requests were granted while Peltier's was denied does not establish that male employees who were "similarly situated in all respects" to her received more favorable treatment than she did. *Gragg*, 373 F.3d at 768 (citing *Mitchell*, 964 F.2d at 583)).

## 2. *Internal Agency Investigation*

Peltier's second allegation of gender discrimination concerns the agency's internal investigation into her suspected involvement in leaking information to a suspect. The district court held that Peltier did not suffer any adverse employment action in connection with this incident because "she was on paid administrative leave while being investigated and thereafter was completely exonerated and allowed to return to her position with the agency." The district court also held that, "[i]n any event, the plaintiff has not shown that the agency's legitimate articulated reason for its differential treatment of her [as compared to the male agent, her suspected co-conspirator,] during the investigation was pretextual," given the evidence implicating Peltier and the polygraph examiner's conclusion that she had been deceptive in answering the most crucial questions in the test.

We agree with the district court's analysis and conclusion. We have held that "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir. 2004) (emphasis in original) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 744, 752 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)); *see also Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that a police officer suffered no adverse employment action where he was temporarily placed on paid administrative leave during an internal investigation). In this case, Peltier admits that she was put on paid administrative leave pending the outcome of the investigation, and was restored to her position upon the termination of the investigation. Therefore, she suffered no adverse employment action.

Peltier's assertions that the investigatory focus on her was somehow unwarranted, or unduly severe as compared to the focus upon the male agent, are also without merit. While the district court did find that Peltier was subject to more intense scrutiny than the male agent, the United States has established that this heightened scrutiny was justified by legitimate reasons. For example, Peltier's unique access to the sensitive information that the agency suspected was leaked – particularly the information concerning the Ramada Inn, which was noted on the napkin in the suspect's residence – clearly pointed suspicion primarily at her. Moreover, the fact that Peltier failed the polygraph test while the male agent did not further justifies the heightened scrutiny to which she was subjected.

## B. *Disability Discrimination Claim*

Peltier alleges that the agency's failure to grant her request for a transfer to the Cleveland office following the internal investigation constitutes impermissible discrimination on account of her disability. This claim is governed by the Rehabilitation Act, 29 U.S.C. § 791, et seq., which provides the remedy for federal employees alleging disability discrimination. The Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In order to establish a prima facie case of disability discrimination under the Rehabilitation Act, Peltier must show that: (1) she is a disabled person under the Act; (2) she is otherwise qualified; and (3) she was denied a reasonable accommodation solely by reason of her disability. *Id.* at 846.

The district court held that Peltier's disability claim failed as a matter of law because she had not met her burden of proving that she was denied a reasonable accommodation. The fatal defect in Peltier's claim, according to the district court, was her failure to offer proof that any vacant positions for which she was qualified were available in the Cleveland office, which was the only office to which she requested transfer. The United States, by contrast, had cited the uncontroverted testimony of Richard Rawlins, the Division Director of the Columbus Field Division, in which he stated that no such positions existed. This testimony was offered in the Merit Systems Protection Board proceedings, and the Board relied upon Rawlins's testimony in holding that no vacant positions were available in the Cleveland office at the time of Peltier's requested transfer.

On appeal, Peltier responds that she "was prevented from establishing that Grade 5-7 inspector positions were available in [the Cleveland office]," though she fails to explain how she was prevented from making that showing. It is Peltier's burden to show that at the time of her transfer request there were vacant positions in the Cleveland office whose essential functions she was qualified to perform. *See, e.g., Mengine v. Runyon*, 114 F.3d 415, 418 (3d Cir. 1997) (holding that the plaintiff must "'demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [his former job]'") (quoting *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996)); *see also Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457-58 (6th Cir. 2004); *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 728 (6th Cir. 2000). Peltier has made no such showing here.

The only specific position that Peltier mentions is the Inspector position for which she had unsuccessfully applied in 1996. Even assuming that that position was still vacant when she applied for the disability-related transfer, however, Peltier makes no attempt to demonstrate that she was qualified to perform the essential duties of that position. We simply cannot make assumptions about her qualifications, particularly given the qualitative differences between the Investigative Assistant position that she held in the Toledo office, which involved primarily secretarial and clerical duties, and the Inspector position in the Cleveland office. Peltier's failure to demonstrate that she was qualified for any vacant positions in the Cleveland office at the time of her transfer defeats her disability discrimination claim.

## III.

For each of the above reasons, the district court's judgment is AFFIRMED.