**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0832n.06
Filed: November 14, 2006

No. 05-4478

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RHONDA M. DENDINGER, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| STATE OF OHIO, BCI & I, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellee.** | ) | |
| | ) | |

Before:  BATCHELDER and MOORE, Circuit Judges, and COHN,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.**    Appellant Rhonda M. Dendinger ("Dendinger") brought this suit against the State of Ohio's Bureau of Criminal Identification and Investigation ("BCI & I"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.; the Americans with Disabilities Act of 1990 ("ADA"), *id.* §§ 12101 et seq.; and the Rehabilitation Act, 29 U.S.C. §§ 701 et seq.  She also stated claims for civil rights violations, under OHIO REV. CODE §§ 4112.01 et seq., and for intentional infliction of emotional distress ("IIED") under Ohio state law.  Dendinger complains that her supervisors denied her job transfers and work assignments, subjected her to a hostile working environment, and eventually constructively discharged her because she is female and suffers from headaches and

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

depression. The district court concluded that Dendinger had failed to establish that a genuine issue of material fact existed as to any of her claims and, therefore, granted summary judgment for BCI & I. Dendinger now appeals the district court's order. For the reasons set forth below, we **AFFIRM IN PART**, **VACATE IN PART**, and **REMAND** the district court's grant of summary judgment for BCI & I.

## I. BACKGROUND

In 1988, BCI & I, a division of the Ohio Attorney General's Office, hired Dendinger as a Special Agent. Dendinger claims that, as the only female investigator in her district and the only female BCI & I agent supervised by Phil Lucas ("Lucas"), she was subjected to discriminatory treatment dating almost from the very beginning of her tenure at BCI & I. She asserts that the situation worsened after two separate incidents in 1991 and 1992 during which she rebuffed the sexual advances of two different BCI & I supervisors.

According to Dendinger, in 1990 or 1991, supervisor John Onan ("Onan") declined to issue her a piece of equipment known as a "raid bag," which he readily provided to any male agent who requested one. Dendinger also claims that Onan insisted that she work overtime without pay. In addition, Dendinger alleges that Lucas discriminated against her by adopting an unpleasant manner toward her; expressing displeasure at the presence of a female employee on his staff; denying her requests to attend training sessions (which were attended by male employees) and to work as part of the Terrorism Task Force (to which all of her male co-workers were assigned); and failing to assign cases to her in numbers equal to those assigned to male employees. Finally, Dendinger claims that Onan, Lucas, and supervisor Pete Tobin reacted negatively to Dendinger's taking maternity and sick leave to which she was entitled and that BCI & I improperly denied her first three requests for

2

a position in the Major Crimes Unit, despite the fact that she was more qualified than the male employees who received two of the positions.[1]

In 1998, Dendinger was injured when a bullet fired by another agent during weapons training ricocheted and struck her hand. She claims that she was wrongfully required to use personal leave to recover from that work-related injury.[2] She also complains that, in 2001, she suffered a stress fracture in her right foot and was placed on disability leave despite her belief that she was capable of performing light-duty work. On December 10, 2001, after Dendinger had returned from that leave, Lucas orally reprimanded her for failing either to complete investigative reports in a timely manner or to provide adequate documentation of her investigative activities. Lucas reduced the reprimand to writing and added it to Dendinger's personnel file, an action to which Dendinger raised no objection at the time. Dendinger now contends, however, that male employees, who were often guilty of similar infractions, were merely warned and not formally disciplined.[3]

On December 5, 2002, Lucas filed an internal complaint against Dendinger, requesting that Internal Affairs investigate the possibility that she had lied to her secretary and supervisor and falsified records in order to collect pay for work that she had not performed. Lucas suspected that Dendinger had filed false mileage reports and made dishonest statements to the effect that she had been working in the field when she had actually been at home or conducting personal business. On

---

[1]Dendinger concedes that the third position was awarded to a woman. Dendinger herself was eventually assigned to the Major Crimes Unit in 1996, after she filed a grievance regarding the denial of her first three applications.

[2]After Dendinger was awarded worker's compensation benefits, she received a credit for the lost personal days.

[3]Dendinger admits that Lucas had orally counseled her on a previous occasion, in July 2001, about her reporting and documentation problems.

December 10, 2002, BCI & I covertly installed a Global Positioning System ("GPS") in Dendinger's state-issued vehicle. From December 11, 2002 until January 15, 2003, BCI & I agents monitored the GPS signal to determine whether Dendinger's actions were consistent with her weekly reports, time sheets, and gasoline vouchers. That monitoring revealed that Dendinger was indeed falsifying records and lying to her supervisors.

On March 6, 2003, Dendinger was suspended with pay pending the outcome of the BCI & I investigation. One week later, on March 14, BCI & I advised Dendinger that the investigators had recommended her termination and that a hearing would be held on March 21. That hearing never occurred, however, because Dendinger resigned the day before it was to take place.

Dendinger argues that her superiors' behavior toward her constituted discrimination motivated by gender bias and by her supervisors' resentment at her rejection of their sexual overtures. According to Dendinger, her work environment eventually became so hostile that she was forced to resign. Dendinger also contends that she was discriminated against on the basis of her disabilities, which she identifies as migraine headaches and depression. She claims that BCI & I refused to assign cases to her because of her headaches. She also asserts that the headaches — but not the depression — interfered with her ability to perform her work. Dendinger argues that she gave BCI & I notice that she suffered from a disability when she notified her supervisors that she suffered from severe headaches and that she alerted BCI & I to her depression at the time of her resignation. She concedes that she never requested assistance from BCI & I regarding either the headaches or the depression.

After her resignation, Dendinger filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), received a right-to-sue letter, and subsequently filed suit in the

4

United States District Court for the Southern District of Ohio. BCI & I moved for summary judgment, appending to its motion the affidavit of Kurt Shearer ("Shearer"), a BCI & I supervisor. Dendinger opposed the summary judgment motion and filed a motion to strike Shearer's affidavit on the ground that it consisted entirely of hearsay and conclusory statements. Dendinger attached an affidavit of her own to her summary judgment response. BCI & I then submitted a reply brief in support of its motion for summary judgment, a brief in opposition to Dendinger's motion to strike, and a motion to strike Dendinger's affidavit as containing hearsay and unsupported statements. Dendinger moved to strike BCI & I's reply brief on the ground that it set forth new facts in support of the summary judgment motion, in violation of the district court's local rules. On October 13, 2005, the district judge issued a Memorandum Opinion and Order denying both of Dendinger's motions to strike, granting in part BCI & I's motion to strike Dendinger's affidavit, and granting BCI & I's motion for summary judgment. Dendinger now appeals all of the district court's rulings.

## II. ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party bears the initial burden of showing the absence of a genuine issue of material fact." *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). Once the movant has satisfied its burden, the nonmoving

---

[4]Dendinger argues that, in ruling on the motion for summary judgment, the district court erred in considering the Shearer affidavit and BCI & I's reply brief and in failing to consider portions of Dendinger's own affidavit. After examining those documents, we conclude that their consideration or exclusion therefrom is immaterial to the disposition of the motion for summary judgment.

5

party must produce evidence showing that a genuine issue remains. *Id.* The court must credit all evidence presented by the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* The nonmovant must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is proper when the nonmoving party has had adequate time for discovery and yet "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. We review a district court's grant of summary judgment de novo. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006).

## A. Dendinger's Title VII Claims

Title VII "'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). One such prerequisite is that

> [a]n individual must file a charge [of discrimination with the Equal Employment Opportunity Commission ("EEOC")] within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.

*Id.* (citing 42 U.S.C. § 2000e-5(e)(1)). The parties agree that, if this provision applies, all of Dendinger's claims based upon events occurring before August 17, 2002 are time-barred.

Dendinger argues, however, that her claims are based upon the continuing-violation doctrine, which tolls the § 2000e-5(e)(1) limitations period. We "have recognized only two narrowly limited exceptions of 'continuing violations' which would toll the running of a statute of limitations under

6

Title VII . . . ." *EEOC v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 838 (6th Cir. 1988). The first arises from an ongoing series of discriminatory acts, the second from a long-standing policy of discrimination. *Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003). Dendinger can establish neither.

In *Morgan*, the Supreme Court emphasized the inapplicability of the continuing-violation doctrine to discrete acts of discrimination, even those that are related to one another, apart from hostile environment claims.

> Morgan argues that the statute does not require the filing of [an EEOC] charge within 180 or 300 days of each discrete act, but that the language requires the filing of a charge within the specified number of days after an "unlawful employment *practice*." "Practice," Morgan contends, connotes an ongoing violation that can endure or recur over a period of time. In Morgan's view, the term "practice" therefore provides a statutory basis for the . . . continuing violation doctrine. This argument is unavailing, however, given that 42 U.S.C. § 2000e-2 explains in great detail the sorts of actions that qualify as "[u]nlawful employment practices" and includes among such practices numerous discrete acts. There is simply no indication that the term "practice" converts related discrete acts into a single unlawful practice for the purposes of timely filing.

536 U.S. at 110-11 (internal citations omitted).

After summarizing each of its prior continuing-violation holdings, the *Morgan* Court continued:

> We derive several principles from these cases. First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.

*Id.* at 113.

In this case, each of the violations of which Dendinger complains was a discrete occurrence of which she was aware at the time. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 247-48 (6th Cir.

7

2003) (holding that *Morgan* does not permit the application of the continuing-violation doctrine to "discrete acts of which [a plaintiff] was immediately aware when they occurred, [when the plaintiff] has presented no evidence of a longstanding policy of discrimination"). Moreover, Dendinger has failed to present any evidence that BCI & I had a longstanding policy of discrimination. Accordingly, the district court was correct in granting summary judgment for BCI & I on all of Dendinger's Title VII claims premised upon events occurring before August 17, 2002.

Dendinger also asserts claims arising from BCI & I's internal investigation of her, its failure to notify her of the investigation until after it had been completed, and her supervisors' refusal to assign cases to her in the same manner and at the same rate as to her male counterparts.[5] She argues that these events constituted adverse employment actions taken by BCI & I against her. She also complains that a hostile work environment created by BCI & I resulted in her constructive discharge.

We have repeatedly held, however, that neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action. *See Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (collecting cases).[6] Similarly, Dendinger has failed to explain how BCI & I's alleged failure to notify her of the investigation qualifies as such an action.[7]

---

[5]It is undisputed that these claims are timely.

[6]*Peltier* quotes from *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir. 2004) (en banc). *Peltier*, 388 F.3d at 988. The Supreme Court subsequently granted certiorari in that case and held that the definition of "adverse employment action" is broader in retaliation cases than in discrimination cases. *Burlington N. & Santa Fe Ry. Co. v. White*, — U.S. —, 126 S. Ct. 2405 (2006). Because Dendinger does not state a retaliation claim, however, our statement in *White* remains applicable here.

[7]It is, moreover, uncontroverted that Dendinger was in fact notified of the investigation on March 14, 2003, and was invited to attend a hearing at which she would be afforded an opportunity

8

In addition, as the district court noted, the manner in which an employer assigns job duties to an employee and the employer's criticism of the employee's performance "normally are insufficient to establish a constructive discharge as a matter of law," *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004), and Dendinger's evidence does not establish that her working conditions were so unbearable that she could not have remained on the job while pursuing available remedies. In any event, even were we to hold that Dendinger has satisfied the requirements of a prima facie case of constructive discharge, she has failed to produce evidence that BCI & I's asserted legitimate, nondiscriminatory reason for denying her assignments and initiating the internal investigation — namely, that she was unreliable and was suspected of falsifying reports — was pretextual.

Nor can Dendinger's hostile-environment constructive-discharge claim survive summary judgment. Even if Dendinger could show that BCI & I created a hostile environment by permitting supervisors to make sexual overtures toward her, to "[make] it very clear . . . that [they] did not like having a woman agent,"and to be "condescending, rude and mean" to her, Appellant Br. at 9, "the fact that [a] plaintiff may have proven a hostile work environment is not enough by itself to prove constructive discharge also." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Rather, "unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997), *cited in Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). The harassment alleged by Dendinger does not rise above the level of "ordinary" discrimination.

---

to respond to the charges. She declined, however, to avail herself of the opportunity to be heard, opting instead to resign on the day before the hearing was to take place.

**B. Dendinger's ADA Claim**

Dendinger next alleges that BCI & I violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. BCI & I argues that it is entitled to sovereign immunity from this claim under the Eleventh Amendment. As the district court correctly found, the Eleventh Amendment does in fact bar suits against states by private individuals for money damages under Title I of the ADA. *See Bd. of Trs. of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363-74 & n.9 (2001).

**C. Dendinger's Rehabilitation Act Claim**

Dendinger also claims that BCI & I's actions violated the Rehabilitation Act, 29 U.S.C. §§ 701 et seq., which prohibits the exclusion of otherwise qualified, disabled individuals from programs receiving federal financial assistance. According to Dendinger, rather than reasonably accommodating her headaches, BCI & I instead punished her for them by denying her work assignments.

To qualify as a person with a disability, a Rehabilitation Act plaintiff must show that she "has a physical or mental impairment which substantially limits one or more . . . major life activities." 29 U.S.C. § 705(20)(B). "'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerabl[y]' or 'to a large degree.'" *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002) (first alteration in original).[8] "'Major life activities' . . . refers to those activities that are of central importance to daily life," such as "walking, seeing, and hearing." *Id.* at 197. Dendinger has not shown that her headaches considerably limit her ability to engage in major life activities; the need to lie down occasionally in a dark, quiet room is not akin to blindness or the inability to walk.

---

[8]The *Toyota* case is an ADA case, not a Rehabilitation Act case. By statute, however, Rehabilitation Act claims are subject to the same standard as are ADA claims. *See* 29 U.S.C. §§ 791(g), 794(d).

Moreover, even were Dendinger able to prove that her headaches constitute a disability, she has not shown that she was terminated because of that disability, for the reasons set forth in the Title VII analysis above.

**D. Dendinger's State-Law Claims**

Finally, Dendinger asserts claims under Ohio state law for intentional infliction of emotional distress ("IIED") and for gender discrimination in violation of OHIO REV. CODE ANN. § 4112.02(A). The district court granted summary judgment on both claims, concluding that the IIED claim was unsupported by evidence and that the § 4112.02(A) claim was barred by the Eleventh Amendment. The district court was correct on both counts.

As a threshold matter, we note that, although BCI & I's First Amended Answer asserted Eleventh Amendment immunity against Dendinger's IIED claim in federal court, BCI & I failed to include the immunity argument in its summary judgment motion, which instead addressed only the merits of the claim. On appeal, BCI & I again neglected to brief or argue the immunity issue with respect to the IIED claim.

A state may waive Eleventh Amendment immunity through its litigation conduct. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1584 (2006). *See also Wis. Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) ("[T]he Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.") (internal citations omitted); *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006) ("If a State refuses to invoke its sovereign immunity as a threshold

11

defense . . ., it cannot credibly be heard to complain about the indignity of the federal courts resolving the merits of its case — and in its favor no less."). Accordingly, and at the urging of both parties, we address the merits of Dendinger's IIED claim.

To state a cause of action for IIED in Ohio, a plaintiff must demonstrate that the defendant, "by extreme and outrageous conduct[,] intentionally or recklessly cause[d] severe emotional distress." *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666, 671 (Ohio 1983) (internal quotation marks omitted). We have previously held that "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (applying Ohio law). Dendinger has established neither that BCI & I terminated her nor that its actions were otherwise extreme or outrageous. Accordingly, the district court correctly entered summary judgment against her on the IIED claim.

BCI & I did make an Eleventh Amendment immunity argument with respect to Dendinger's OHIO REV. CODE ANN. § 4112.02(A) claim, both in its motion for summary judgment and in its appellate brief. BCI & I and the district court are correct that, absent state waiver or express congressional abrogation, the Eleventh Amendment deprives the federal courts of the power to entertain suits on claims such as this. U.S. CONST. amend. XI; *In re Hood*, 319 F.3d 755, 759-60 (6th Cir. 2003), *aff'd sub nom. Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004). Because neither waiver nor abrogation applies here, Dendinger's § 4112.02(A) claim may be adjudicated only by the Ohio courts pursuant to Ohio law. *See* OHIO REV. CODE ANN. § 2743.02(A)(1).

### III. CONCLUSION

We **AFFIRM** the district court's grant of summary judgment for BCI & I on Dendinger's federal claims under Title VII, the ADA, and the Rehabilitation Act, and on her state law claim for intentional infliction of emotional distress. We **VACATE** and **REMAND** its order granting summary judgment for BCI & I on Dendinger's claim under OHIO REV. CODE ANN. § 4112.02(A) for dismissal without prejudice on Eleventh Amendment immunity grounds.