NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1273n.06

No. 12-1369

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Dec 11, 2012
DEBORAH S. HUNT, Clerk**

CHARMANE ECHOLS,

    Plaintiff-Appellant,

        v.

KALAMAZOO PUBLIC SCHOOLS,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Western District of Michigan

_____/

Before:     **GUY, SUTTON, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**     Plaintiff Charmane Echols appeals from the district court's entry of summary judgment in favor of the defendant Kalamazoo Public Schools (KPS) and the denial of her motion for reconsideration with respect to the claim that she was denied promotion to four different positions during 2008 and 2009 because of a perceived disability in violation of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), and the parallel provisions of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCLA § 37.1202. Reviewing the district court's grant of summary judgment de novo, and viewing the evidence and all the reasonable inferences in plaintiff's favor, we affirm.

**I.**[1]

Echols has worked for KPS since she was hired as a classroom teacher during the 1978-1979 school year. Ten years into her tenure, she was in a car accident that resulted in a closed-head injury that prevented her from completing the 1988-1989 school year and contributed to a period of leave in 1993. Echols served one year as an administrative assistant for the 1996-1997 school year, and was promoted to and served as Principal of Northglade Elementary from August 1997 until complaints from parents and staff, falling test scores, and departures by students and employees led to her allegedly forced demotion in early 1999. While Echols blamed the problems at Northglade on the failure to provide her a mentor and alleged that someone at the union had said the demotion was due to her injury, her grievance was resolved when she accepted transfer to an assistant principal position at a principal's salary. Echols worked as an assistant principal in three different schools for more than ten years. When all assistant principal positions were eliminated in June 2010, Echols became a leadership coach and is apparently still employed in that capacity.

Echols claims she was denied promotion to four different positions over a period of a year and a half: (1) Principal of Woods Lake Elementary (May 2008); (2) Coordinator of Early Childhood Education (March 2009); (3) Director of Elementary Education (May 2009); and Principal of Prairie Ridge Elementary (September 2009). Without repeating the district court's detailed summary of the application and interview process, we note that KPS has a predetermined format that was followed for each of the positions for which Echols applied.

---

[1]The facts are largely not in dispute, as the crux of this appeal is not a conflict in the evidence but the reasonable inferences that may be drawn from it.

Mary Weber, Assistant Superintendent of Human Resources, reviewed the applications, determined who was qualified, and scheduled initial panel interviews. Weber selected plaintiff for panel interviews for all of the positions except the second—Coordinator of Early Childhood Education—which required a minimum qualification of a Master's Degree in Early Childhood Education or Child Development. Plaintiff had neither, as her Master's Degree is in Reading Instruction. The successful candidate, Kellye Wood, on the other hand, had the requisite degree, administrative experience, and was unanimously recommended by the initial panel of interviewers.[2]

For each position, a panel conducted 30-minute interviews during which the same predetermined questions were asked in sequential order. Each panel member individually prepared a feedback form ranking the candidates. Weber acted as facilitator and timekeeper for all of the interviews in question, and forwarded the feedback forms to the Superintendent, Dr. Michael Rice. Dr. Rice selected candidates for a final round of interviews conducted by himself and another supervisor, and made all the final hiring decisions.

Weber included Echols in the panel interviews for the other three positions, but Echols did not advance to the second round for any of them and the positions were offered to other candidates. Plaintiff asserts generally that one or more members of one or more interview panels must have known about her closed-head injury because they were "around when the accident occurred." The fact that they were employed by KPS at the time of the accident

---

[2]Plaintiff attempts to dispute the finding that she was not otherwise qualified for the Coordinator position in a footnote to her brief, but the references to her deposition testimony confirm that she was interviewed for the position of Director of Elementary Education but not for the position of Coordinator of Early Childhood Education.

some 20 years earlier, however, does not support an inference that they knew she had suffered a closed-head injury—much less that they perceived her to be disabled as a result of it. Patricia Coles-Chalmers, the only panel member who said she knew Echols had been injured in an accident years before, testified that she did not know that Echols had any symptoms related to it.

An eight-member panel, which included Weber and Coles-Chalmers, conducted the initial interviews for what would be the position of Principal of Woods Lake Elementary. Echols contends that the successful candidate, Mitch Hawkins, had less administrative experience than she did. A year later, a six-member panel, which included Weber, Coles-Chalmers, Timon Kendall, and Dr. Terina Harvey, conducted interviews for the position of Director of Elementary Education. Kendall and Harvey testified that they did not know of Echols's injury and did not perceive Echols to be disabled. Coles-Chalmers testified that Echols's answers often seemed rehearsed or memorized, while Harvey testified that she looked for the candidate with the best answers and thought that Dr. Zaheera Shakir-Khan gave the best answers. Plaintiff did not advance to the second round. KPS ultimately hired Dr. Khan, whom Echols acknowledged to have been selected because she was exceedingly well qualified.

In September 2009, a four-member panel consisting of Weber, Coles-Chalmers, Khan, and Cindy Green conducted initial interviews for the position of Principal of Prairie Ridge Elementary. Khan testified that Echols's answers were disjointed and nonresponsive, while she rated Karen Spencer the highest because her responses were most comprehensive.

Similarly, Green testified that she chose Spencer for her "in-depth answers for a lot of core areas like reading and math." Echols argues that she had more administrative experience than Spencer. It was during this interview that Weber asked Echols whether she was referring to "notes" while answering—a question that Echols interpreted as implying a perception that she would not have answered as well without notes because of the prior closed-head injury. When Echols complained later about this question, Weber explained that she had asked because using notes would allow a candidate to have an unfair advantage.

Shortly after the last unsuccessful interview, Echols approached Khan for feedback and was referred to Weber pursuant to protocol. Echols contends that direct evidence of discrimination may be inferred from what Weber allegedly said during that meeting (which is disputed), what Weber wrote in emails to Khan after that meeting, and what Rice testified he was told by Weber when they discussed Echols's December 2009 letter complaining that her applications had been "tainted by erroneous perceptions of a closed head injury." The district court described the evidence in detail, quoting the emails in full, and accepted for purposes of summary judgment that Weber had shown Echols her separate medical file, told Echols that it was missing a release to work that she should get, and suggested that her disjointed or fragmented responses may have been a result of her closed-head injury.

There was no evidence, however, to contradict Weber's statement that she did not know Echols had a closed-head injury at the time of the interviews, and at all events Weber was a non-decisionmaker. Even if we were to infer otherwise, every panel member deposed said that Weber did not share her opinions of the candidates with them during the interviews.

Moreover, Coles-Chalmers, the one panel member who knew about the accident, did not think Echols had any symptoms from it. Finally, Dr. Rice received forms from all of the individual panel members for each position and decided whom to interview without having spoken to Weber about her opinion of Echols. Indeed, Dr. Rice testified that after he received Echols's letter, he sought an explanation from Weber, disapproved of Weber's handling of the meeting with Echols, and disagreed with Weber's alleged opinion that Echols was affected by the 20-year-old closed-head injury. Rice testified that prior to this conversation, he was not aware that plaintiff had suffered an injury.

## II.

The parties argue and we assume that plaintiff's federal and state disability discrimination claims may be analyzed together. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (PWDCRA substantially mirrors the ADA); *Peden v. City of Detroit*, 680 N.W.2d 857, 870 (Mich. 2004). Echols sought to establish that she was denied these promotions because of a perceived disability under both the direct evidence and circumstantial evidence method of proof. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997). The district court found no material question of fact had been established under either theory.[3]

First, Echols contends that the district court erred in finding that no prima facie showing had been made based on direct evidence of discrimination. Direct evidence has

---

[3]Although it does not alter the outcome of this case, we note that when the district court made its decision this court had not yet abandoned the "sole reason" standard in favor of a "but for" standard of causation to recover under Title I of the ADA. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

been described as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Direct evidence must prove not only discriminatory animus, but that the employer acted on that animus. *Amini*, 440 F.3d at 359. As she did in the district court, Echols relies on the evidence concerning Weber's statements during the meeting with her, in the emails with Khan, and to Rice after the process had been completed. There was no evidence, however, that Weber knew about Echols's accident or closed-head injury during the interview process. Moreover, it was undisputed that Weber conveyed no opinions about Echols to the other members of the interview panels or to Dr. Rice. No reasonable jury could conclude from the evidence in this case that KPS's decisions to hire other candidates for these positions were influenced or motivated by discrimination based on perceived disability. *See Noble v. Brinker Int'l Inc.*, 391 F.3d 715, 723 (6th Cir. 2004); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000).

Alternatively, Echols challenges the district court's finding that she failed to establish a genuine issue of material fact for trial under the familiar *McDonnell Douglas* burden-shifting framework. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Without repeating the district court's well-reasoned analysis, we turn to Echols's principal claims of error. With respect to the prima facie case, Echols challenges the determination that she had "not rebutted KPS's evidence that no one perceived her to have a disability at the time of

interviewing." Specifically, Echols argues that the district court failed to appreciate the significance of Weber's inability to explain when she learned of plaintiff's injury. Weber testified, however, that she did not know of the injury at the time of the interviews and saw the medical file for the first time when she met with Echols. The district court did not err in refusing to infer that Weber was aware of plaintiff's injury or perceived her to be disabled at the time of the interviews, and, once again, at all events Weber was a non-decisionmaker.[4]

Even if plaintiff could establish a prima facie case, KPS articulated legitimate nondiscriminatory reasons for not selecting Echols, including that other candidates performed better in the interviews, the panel members independently ranked other candidates higher, and Dr. Rice evaluated the rankings and independently made the final decisions. This was sufficient to shift the burden back to plaintiff to prove that the defendant's explanation was pretext for discrimination.

To survive summary judgment, plaintiff must present evidence sufficient to create a genuine issue as to whether the proffered reasons were pretextual. *Whitfield*, 639 F.3d at 260. Echols argues that the proffered reasons had no basis in fact and did not actually motivate the decision not to promote her. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). As proof, however, plaintiff emphasizes that when she met with Weber after the last unsuccessful interview, Weber did not mention a lack of qualifications. Although otherwise qualified for the three positions other than Coordinator

---

[4]Plaintiff misstates the record in connection with this issue, arguing that the district court "ignored" the fact that she was demoted without explanation *following* her accident. The record is clear that plaintiff's accident during the 1988-1989 school year *preceded* both her promotion to Principal of Northglade in August 1997 and her demotion to an assistant principal position in February 1999.

of Early Childhood Education, Echols was not identified by the interview panel members as

the best candidate and was not selected for final interviews.  In denying reconsideration on

this issue, the district court added:

> No evidence suggests that Dr. Rice's final decisions were affected by Ms. Weber's involvement.  Even if Dr. Rice was unhappy with an interview panel's recommendation, he had the authority to interview any candidate that he single-handedly chose–as he did with Echols for two positions that do not form a basis of this lawsuit.  Of course, like the positions in question, Dr. Rice found other candidates better suited for those positions.  Moreover, several panel members besides Ms. Weber gave sufficient reasons for hiring other candidates, and each panel member testified that Echols was not the top candidate.

The district court did not err in finding that no reasonable juror could conclude that the

proffered reasons were pretext for discrimination.

**AFFIRMED.**