Harry HAYES, Plaintiff–Appellant,

v.

NORFOLK SOUTHERN CORPORA-
TION and Norfolk and Western Rail-
way Company, Defendants–Appellees.

No. 00–3876.

United States Court of Appeals,
Sixth Circuit.

Dec. 18, 2001.

Before NELSON, DAUGHTREY, and MOORE, Circuit Judges.

DAUGHTREY, Circuit Judge.

The plaintiff, Harry Hayes, sued the defendants, Norfolk Southern Corporation

and Norfolk and Western Railway Company (collectively Norfolk Southern), under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, for lung damage caused by exposure to diesel fumes throughout the course of his employment. Norfolk Southern moved for summary judgment on the grounds that Hayes's claim was barred by the FELA's three-year statute of limitations. The district court granted summary judgment for the railroad based on a hospital x-ray report (submitted for the first time with the Norfolk Southern's reply brief) showing that Hayes had been diagnosed with emphysema in both lungs in 1993, over one year before he suffered two lung collapses, or pneumothoraxes, and more than three years before he filed suit. Hayes moved for reconsideration, submitting for the first time an affidavit from his doctor stating that his lung collapses were caused by diesel asthma, not emphysema, and that the 1993 diagnosis of emphysema would not have put one on notice of the entirely "separate and distinct condition of diesel asthma." The district court denied the motion for reconsideration, and the plaintiff now appeals both that ruling and the district court's grant of summary judgment to Norfolk Southern.

## FACTUAL AND PROCEDURAL BACKGROUND

Harry Hayes began working for Norfolk Southern as a brakeman in 1978 and was promoted to conductor in 1989. He testified that throughout his career on the railroad, he experienced eye irritation and a sore throat as a result of on-the-job exposure to diesel fumes. Claiming that, as a result of this exposure, he eventually "became diseased, sick, poisoned, and his internal organs, particularly his lungs, were affected and weakened, so as to cause him to suffer from a disease, all of which was the direct result of the negligence of the Defendant," Hayes filed suit under the FELA on April 10, 1998. Neither the initial complaint nor an amended complaint specified the disease to which the plaintiff was referring.

During discovery, the railroad served interrogatories, one of which asked Hayes to state:

(a) whether you have ever been diagnosed by any medical practitioner, or by any hospital, clinic or other institution, as having chronic obstructive pulmonary disease, *asthma,* chronic bronchitis, *emphysema* or tuberculosis, or any other cardiac or pulmonary disease of any type; and (b) when and by whom such diagnosis was made. (Emphasis added.)

Hayes responded:

Yes. I was diagnosed with left sided pneumothorax and emphysema in May 1995 by Doctors Mousset and Horton. There may have been others but I do not recall.

On March 16, 1999, Hayes verified the accuracy of his answers to the defendant's interrogatories. In his deposition, Hayes testified that, in addition to the lung collapse and various ailments unrelated to his lungs, he suffered from "emphysema," "chronic bronchitis," and "maybe asthma." The briefs and materials submitted by Hayes before he moved for reconsideration do not mention the term "diesel asthma," however.

Following Hayes's deposition, Norfolk Southern moved for summary judgment. The railroad argued that Hayes's pulmonary illness claim was barred by the FELA's three-year statute of limitations, because Hayes was put on notice of any injuries from work-related diesel exposure by the eye irritation and sore throat that he experienced beginning in 1978 and attributed to defendant's negligence. In his opposition brief, Hayes responded by arguing that his sore throat and eye irritation were too fleeting and intermittent to

have put a reasonable person on notice of any injury beyond the "normal aches and pains following a hard day's work." Hayes also noted that eye and throat irritation would not put a reasonable person on notice of a *"pulmonary* condition." Hayes emphasized that during this period he "did not experience any respiratory problems" and that *"[n]o lung symptoms were identified or diagnosed by either Mr. Hayes or his physicians until 1995."* (Emphasis added.)

In its reply, the railroad submitted for the first time a radiology report for Hayes from St. Charles Hospital, dated December 31, 1993, stating that "[b]olus emphysema is present in both lungs." The railroad argued that this diagnosis was sufficient, as a matter of law, to put a reasonable person on notice of pulmonary injury. The railroad further contended that because Hayes admitted that he had experienced "shortness of breath" before his lung collapsed in 1995, and because he had attributed the throat and eye irritation he had experienced since 1978 to inhalation of diesel fumes, he was—or should reasonably have been—on notice of both his injury and its cause since 1993, more than three years before he filed suit.

Two weeks after Norfolk Southern submitted its reply brief but eight days before the district court granted summary judgment, Norfolk Southern deposed Dr. Hanna, the plaintiff's family doctor from 1989 to 1996.[1] Dr. Hanna testified that Hayes's lung first collapsed in February or March 1995 and that Hayes experienced a second lung collapse in May 1995. Dr. Hanna noted that "[e]mphysema by definition is loss of lung tissue" and that within a few weeks after Hayes was diagnosed with emphysema, he discussed the seriousness of the condition with Hayes by showing him

the December 1993 chest x-ray on which the emphysema diagnosis was based. According to Dr. Hanna, by 1993 Hayes had already lost "a lot" of lung tissue because "you can lose quite a bit [of lung tissue] before you can actually make the diagnosis on the x-ray."

Dr. Hanna also testified that in 1994, about one year before Hayes's lung first collapsed, he prescribed medication for Hayes's lung condition. He told Hayes that his emphysema was potentially severe enough to cause a spontaneous lung collapse, and he discussed with Hayes the lifestyle changes he would need to take to "stop the progression of his emphysema" and to lessen this risk of collapse. Among the lifestyle factors that Dr. Hanna and Hayes discussed were Hayes's work conditions, *including his exposure to diesel fumes at work.* According to Dr. Hanna, Hayes "felt that his smoking played a role [in his emphysema], but he felt like it didn't play as much of a role as some of the other exposures to some of the other stuff in the yard." In fact, Hayes specifically complained of and demonstrated concern about his exposure to diesel exhaust. Although Dr. Hanna expressed uncertainty in his deposition as to whether Hayes first mentioned his concerns about diesel exhaust exposure "just prior to or just following [Hayes's] initial lung collapse," Dr. Hanna testified that he "most certainly" discussed with Hayes the need to avoid exposure to potentially aggravating conditions—including "toxic elements," "airborne irritants" and "petro chemicals"— *before* Hayes's lung collapsed in 1995.

In granting summary judgment for the defendant, the district court determined that Hayes's claim for pulmonary injury "arose, at the latest, when he was diag-

---

1. Although Hayes had named Dr. Hanna as an expert witness in May 1999, both parties acknowledged that they were unable to locate Dr. Hanna before the November 1999 deposition.

nosed with emphysema" and thus was barred by FELA's statute of limitations. However, in making this determination, the district court did not consider Dr. Hanna's deposition testimony because the deposition transcript was not filed until the week after summary judgment was entered.

Within the ten-day period specified by Fed.R.Civ.P. 58(e), Hayes filed a motion for reconsideration. Some six weeks later, Hayes filed a brief in support of his motion to reconsider that was accompanied by an affidavit from Dr. Hanna dated December 28, 1999. Dr. Hanna's affidavit stated in key part:

6. Mr. Hayes's lung condition was significantly aggrevated [sic] in 1995, as evidenced by his pneumothoraxes. This in my opinion was caused primarily by the increased exposure to diesel exhaust commencing in 1995 and continuing thereafter.

8. Diesel asthma, as opposed to emphysema, are two very separate and distinct medical conditions. The fact that one may know that he has emphysema, would not mean that he also would know that he had diesel asthma....

9. The pneumothorax suffered by Mr. Hayes was the result of the diesel asthma, and not emphysema. In fact, diesel asthma had never been diagnosed prior to 1995.

In his brief in support of reconsideration, Hayes introduced a variety of new arguments for why summary judgment was improper and explained in a footnote that he had not offered these arguments before summary judgment because Norfolk Southern had not submitted the 1993 hospital record of his emphysema until its reply brief. This contention overlooked, obviously, the plaintiff's failure to answer completely and truthfully the interrogatories and the questions about his medical history.

Hayes's first argument on motion for reconsideration was that there were actually two separate and distinct medical claims at issue—"one for diesel asthma and one for emphysema." According to Hayes, the statute of limitations had not run on the diesel asthma claim because Dr. Hanna's affidavit stated that the lung collapses Hayes suffered in 1995 "were the result of diesel asthma, not emphysema." Second, Hayes argued that "new injury caused by new negligence is actionable" and that his emphysema claim was based on "new acts of negligence" that occurred within three years of the date he filed suit. Third, Hayes argued that, at the very least, he was entitled to recover for the aggravation of his emphysema caused by the "continuing negligence" of the railroad over the three year period before he filed suit. Finally, Hayes argued that the district court should have denied summary judgment because the hospital record the defendant offered in support of its motion was unauthenticated. Hayes did not dispute the accuracy of the hospital record or deny that he had emphysema in 1993.

Norfolk Southern responded that reconsideration was unwarranted for several reasons, including the fact that Hayes failed to demonstrate an intervening change in the controlling law, that evidence not previously available had become available, or the necessity to correct a clear error of law or prevent manifest injustice, and therefore failed to meet the Sixth Circuit's requirements for reconsideration under Fed.R.Civ.P. 59(e). The response also pointed out that none of the plaintiff's pleadings or evidence submitted before reconsideration had ever mentioned "diesel asthma" and the newly-submitted affidavit of Dr. Hanna was of doubtful credibility. Finally, the railroad contended that the plaintiff's new claim for damages for the aggravation of his emphysema after 1995 should be rejected because it

was raised for the first time on reconsideration and was not supported by the law. In his reply, Hayes argued for the first time that Dr. Hanna's affidavit was in fact evidence "not previously available" under Fed.R.Civ.P. 59(e) and repeated the arguments made for the first time in his reconsideration brief.

■ The district court denied the plaintiff's motion for reconsideration, ruling that:

> [Hayes] does not allege mistake, inadvertence, surprise, or excusable neglect. Nor does he suggest that evidence has newly become available to him which would require a different result. Rather, the arguments he gives in his motion to alter or amend amount to little more than a disagreement with the Court's decision, and advises the Court that it should—based on law, cases and arguments he could have made in his previous brief—change its mind.

"In the interest of clarifying the legal rule," however, the district court did address Hayes's new argument that even if his pre–1995 injuries were time-barred, he could recover for exacerbations to earlier injuries because exacerbations were "new injuries." The district court held, correctly, that this argument was without merit because "[i]t is well established in the Sixth Circuit that a plaintiff is barred from bringing a FELA claim more than three years after the *initial* injury and its causes are discovered, even if the injury was later worsened by the same employer," citing *Mounts v. Grand Trunk W. R.R.Co.*, 198 F.3d 578, 581–83 (6th Cir.2000), and *Aparicio v. Norfolk W. Ry. Co.*, 84 F.3d 803, 814–15 (6th Cir.1996), *abrogated on other grounds, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

## DISCUSSION

On appeal, Hayes repeats the arguments he made in support of his motion for reconsideration, many of which were made for the first time in conjunction with the motion for reconsideration and are based upon the deposition testimony and affidavit of Dr. Hanna—evidence that was not submitted to the district court until *after* summary judgment was granted on the basis of the relevant statute of limitations. As a result, we will address them in relation only to the motion to reconsider and not to our review of the district court's decision to grant summary judgment to Norfolk Southern.

### The Grant of Summary Judgment

■ The FELA's statute of limitations provides that "[n]o action shall be maintained unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. A cause of action under the Act accrues "when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." *Aparicio*, 84 F.3d at 814. We have held that a plaintiff's claims are not barred by the statute of limitations if the claims for which the plaintiff is suing are "separate" and "distinct" from earlier ailments outside the three-year limitations period. *See Id.*, 814–15. However, a plaintiff cannot sue for mere "aggravations" or a pre-existing condition of which he should reasonably have known. *See id.; see also Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585, 590 (6th Cir.2001).

■ Because the statute of limitations is an affirmative defense, the defendant bears the initial burden of demonstrating in a FELA case that the statute of limitations has run. *See Campbell v. Grand Trunk Western Railroad Co.*, 238 F.3d 772, 775 (6th Cir.2001). However, once

the defendant produces evidence that a reasonable person, through the exercise of reasonable diligence, would or should have known of the injury and its cause more than three years before suit was filed—for example, by pointing to a diagnosis of a related injury—it becomes the plaintiff's duty to present evidence to the contrary. *See Mounts,* 198 F.3d at 582. One way for the plaintiff to meet this burden is to produce testimony or evidence that demonstrates that the ailment he is suing for is sufficiently "separate" and "distinct" from the initial injury and that the initial injury would not have put a reasonable person on notice. If, at the summary judgment stage, the plaintiff fails to produce such evidence, summary judgment for the defendant is proper. *See id.*

■ In this case, the railroad met its initial burden of showing that Hayes was on notice of his pulmonary injury more than three years before April 10, 1998, by submitting the 1993 hospital medical record that demonstrated that Hayes suffered from "bolus emphysema in both upper lungs." Hayes did not respond before summary judgment to the railroad's argument that the emphysema diagnosis put him on notice of the risk of pulmonary injury. He did not, for example, say anything in his deposition or his response to the relevant interrogatory to suggest that the lung damage he suffered in 1995 was distinct from—rather than an aggravation of—the emphysema he suffered in 1993. In fact, Hayes did not mention or otherwise admit to his 1993 emphysema diagnosis at any time during his deposition or his discovery answers, even when specifically asked. Moreover, on appeal, Hayes does not seem to argue that his lung collapse is an injury "separate" and "distinct" from his emphysema; rather he argues that his lung collapse was *caused* by "diesel asthma," and that "diesel asthma" and "emphysema" are the completely "separate" and "distinct" conditions. Although Hayes

argues on appeal that he testified in his deposition that he did not notice difficulty breathing until his lung collapsed in 1995, in reality his testimony is contradictory on this point. This confused testimony is not enough to establish that Hayes lacked notice of pulmonary damage during the two years between the hospital's diagnosis of emphysema in both lungs and his lung first collapse. *See Campbell,* 238 F.3d at 776 (finding "disingenuous" plaintiff's claim that he "had no idea" that the numbness in his hands was related to work until several years after the numbness began, and rejecting plaintiff's contention that the district court erred in concluding that his contradictory deposition testimony did not establish a genuine issue of material fact).

Furthermore, even if Hayes himself did not notice difficulty with his breathing until his lung collapsed in 1995, he offers no evidence from which a reasonable jury could conclude that his lung collapse was anything other than an aggravation of his emphysema. Although Hayes argues that he testified "repeatedly" that his pulmonary injury was worsened when the railroad changed its policies to operate "long nose forward" in 1995, his deposition testimony suggests only that the irritation to his eyes and throat increased when the railroad began to operate "long nose forward" in 1989 or 1990. Finally, there is no concern in this case that a reasonable person would fail to recognize the seriousness of the initial diagnosis of emphysema and attribute it to the "transient aches and pains after a long day's work." *See Fonseca,* 246 F.3d at 592. A hospital diagnosis of emphysema in both lungs is sufficiently serious to put a reasonable person on notice of lung damage.

■ Hayes argues that he cannot be blamed for failing to provide evidence on summary judgment that his illnesses were distinct because the defendant submitted

the hospital record for the first time in its reply brief. This argument is meritless. If Hayes believed that he needed to respond to the evidence offered in the defendant's reply, it was his responsibility to ask the court for leave to file a surreply. Hayes does not offer any argument or evidence that suggests that he made such a request. Moreover, Hayes is the party responsible for failing to disclose the emphysema report earlier in the proceedings. Hayes offers no explanation for why he did not disclose this information to the defendant when specifically asked in Interrogatory # 7 whether he had ever been "diagnosed by any medical practitioner, or by any hospital, clinic or other institution, as having chronic obstructive pulmonary disease, *asthma* ... or any other cardiac or pulmonary disease of any type" (emphasis added). Hayes cannot hide relevant, harmful evidence in violation of the rules of discovery and then claim unfair surprise when the damning evidence is uncovered late in the proceedings. Hence, we conclude that, in light of the evidence before it at the time, the district court did not err in granting summary judgment to the defendant.

*Denial of the Motion for Reconsideration*

■■■ The standard of review for a trial court's denial of a motion for reconsideration of a grant of summary judgment is generally *de novo*. See *Columbia Gas Transmission Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir.1991). However, we review a district court's refusal to consider evidence produced for the first time on a motion to reconsider only for abuse of discretion. See *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 123 (6th Cir.1982) (holding that district court did not abuse its discretion in refusing to consider on motion for reconsideration evidence in an affidavit that was "not newly discovered and [the] credibility [of which] was doubtful").

■■■ A trial court may grant reconsideration under Fed.R.Civ.P. 59(e) for any of four reasons: (1) because of an intervening change in the controlling law; (2) because evidence not previously available has become available; (3) to correct a clear error of law; or (4) to prevent manifest injustice. See *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "It is well established ... that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in its control prior to the original entry of judgment." *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir.1989).

■■■ The district court dismissed Hayes's motion for reconsideration on the ground that the plaintiff failed to "suggest that evidence has newly become available to him which would require a different result." Hayes argues on appeal that Dr. Hanna's affidavit constitutes newly available evidence because the parties had trouble locating Dr. Hanna. Regardless of any such difficulty, we conclude that the affidavit cannot be considered to create a genuine issue of material fact as to whether Hayes's lung collapse was caused by "separate" and "distinct" disease of "diesel asthma" because it directly contradicts Dr. Hanna's earlier deposition testimony. See *Aparicio*, 84 F.3d at 814–15 (holding that plaintiff's affidavit that recanted his earlier deposition testimony was properly struck and therefore could not serve to create a genuine issue of material fact); *Farrell v. Automobile Club*, 870 F.2d 1129, 1132 (6th Cir.1989) (holding that a party who has been examined at length by deposition may not rely on an affidavit filed to contradict the deposition evidence to create a genuine issue of fact in order to defeat summary judgment).

The contradictions between Dr. Hanna's deposition and his subsequent affidavit are

numerous. For example, Dr. Hanna testified in his deposition that Hayes's lung first collapsed in February or March 1995; he stated in his affidavit that the first lung collapse took place in April 1995. This discrepancy does not appear to be an innocent revision, given that Hayes did not file suit until April 10, 1998. In his deposition, Dr. Hanna explained that "[e]mphysema by definition is a loss of lung tissue" and testified that he told Hayes in 1994 that his emphysema was potentially severe enough to cause a spontaneous lung collapse. He also testified that he prescribed medication and discussed with Hayes the lifestyle changes he could make to "stop the progression of his emphysema" so as to lessen the risk of such a collapse, including the elimination of exposure to harmful elements in the workplace. Dr. Hanna's deposition testimony never once mentioned the term "diesel asthma" or suggested that Hayes's lung collapse was caused by anything other than his emphysema. Since he did not mention "diesel asthma" in his deposition, Dr. Hanna understandably did not provide any testimony that would support his later conclusion that diesel asthma and emphysema were "very separate and distinct medical conditions" and that Hayes's lung collapse was "the result of the diesel asthma, and not the emphysema."

In short, there is no basis on which to find that the district court abused its discretion in failing to grant the plaintiff's motion to reconsider.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.