NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0359n.06

Case No. 17-2127

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FREDERICK PEOPLES,                    )

          Plaintiff-Appellant,        )

                                      )

v.                                    )

                                      )

FCA US, LLC,                          )

                                      )

          Defendant-Appellee.         )

**FILED**
Jul 20, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

BEFORE: SUTTON, McKEAGUE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Frederick Peoples appeals the district court's grant of summary judgment to Defendant FCA US, LLC ("FCA US"), denial of his motion for partial summary judgment, and denial of his motion for reconsideration. This employment discrimination case arises from Peoples' termination from his job with FCA US in November 2014. After filing a charge with the Equal Employment Opportunity Commission ("EEOC") and receiving a right to sue letter, Peoples brought suit for multiple claims under federal law and Michigan state law, including disability discrimination, retaliation, and hostile work environment. The district court granted summary judgment to FCA US on all claims and denied Peoples' motion for partial summary judgment as moot. Peoples filed a motion for reconsideration, which the district court denied. On appeal, Peoples argues that the district court erred by: 1) ruling that

unsworn letters he submitted as exhibits to his motion for partial summary judgment were inadmissible hearsay; 2) failing to recognize record evidence in his motion for reconsideration that would negate any nondiscriminatory reason for Peoples' discharge; and 3) dismissing his hostile work environment claim under Michigan law. For the reasons below, we AFFIRM.

I.

In 2011, Peoples began working as an assembly worker in the chassis department in Defendant FCA US's Sterling Heights Assembly Plant ("SHAP"), located in Sterling Heights, Michigan. In August 2011, Peoples complained to his supervisor that his team was not rotating all tasks among team members, which he believed was required by his union contract. He alleges his complaint led to a confrontation with a coworker, Nate Hansen, on August 15, 2011. In his description of the incident, Peoples testified that Hansen moved toward him and yelled at him for complaining about the rotation and later threw a bottle in his car, which Peoples threw back at him. Peoples also testified that he incurred back and neck pain as a result of the rotation violations, and that Hansen contributed to "the anxiety part of [his] injuries."

Due to his back and neck pain, Peoples missed work from October 14, 2011 to January 4, 2012. Peoples returned to work for less than two weeks. He then left work again and was on approved leave from January 13, 2012 to April 9, 2012.[1]

Following his return to work, on May 7, 2012, Boisey Collins lunged at Peoples and accused him of not rotating with other team members. Other coworkers restrained Collins, who did not physically touch Peoples. Peoples vented that he was sick of the treatment and that he would retaliate against anyone who messed with him. He was removed from his work station,

---

[1] FCA US's statement of material facts, which the district court references, states that Peoples was out from January 18, 2012 to April 9, 2012. However, the reinstatement form that FCA US cites for this information states that Peoples' last day of work was January 12, 2012.

taken to the Labor Department, and then to the plant medical office. Afterwards, Peoples visited urgent care, where he was advised not to return to work that week. He began seeing a psychiatrist, who extended his leave until July 12, 2012. Peoples was later diagnosed with post-traumatic stress disorder, and his leave was extended until February 2013.

During his leave, Peoples filed an EEOC charge alleging race and disability discrimination, as well as retaliation, in connection with the August 2011 and May 2012 incidents. Peoples returned to work on February 18, 2013. He received a right to sue letter on February 19, 2013 but did not file suit within ninety days of receipt of the letter.

Prior to his return to work, Sedgwick—the company responsible for overseeing disability and medical leave requests for FCA US—sent Peoples for an independent medical examination ("IME"). The IME report, dated August 9, 2012, recommended that Peoples be permanently transferred from SHAP to another plant location. On January 5, 2013, FCA US offered Peoples two reassignment options: one at a paint shop on the SHAP campus but in a different building, and the other at the Warren Truck Assembly Plant, a separate location. FCA US asked Peoples to respond with his selection by January 22, 2013. On February 6, 2013, Peoples advised FCA US that he would choose the paint shop placement.

Peoples reported to the paint shop on February 18, 2013, and suffered a work-related injury on March 9, 2013, leaving work on March 13, 2013. Peoples contends that he was sent for another IME in February 2014 to address his mental health. In March 2014, Peoples returned to work. He went on medical leave again on July 2, 2014.

On October 14 or 15, 2014, Peoples returned to work and reported to the paint shop. He learned the position of paint seal operator over the course of four days. The length of his training was atypical—Brad Devine ("Devine"), a SHAP labor relations supervisor at the time of the events

in question, testified that employees typically returned to the job within a day or two of training. Peoples claims that the work violated his work restrictions and that he reported this to management. On October 21, 2014, Peoples was directed to begin performing the job. He was unable to perform the job, and the line had to be shut down. Peoples was disciplined via written warning.

The next day, October 22, 2014, Peoples reported that he was physically unable to perform his job. A doctor was not immediately available, so he called himself an ambulance. Peoples saw a doctor for his back pain and received a note excusing him from work for October 23-24, 2014. Later that day, the plant doctor reviewed Peoples' area and determined that the operation Peoples was required to perform did not violate his restrictions.

On October 24, 2014, Peoples received a "5-day letter" that stated that he had been absent from work since July 2, 2014 and asked him to report to SHAP's HR office by October 31, 2014 unless he could provide satisfactory evidence on or before that date that justified his leave. Otherwise, the letter advised, his seniority would be terminated.

On October 29, 2014, Peoples reported to HR, which directed him to the plant medical office to be cleared for work. Peoples had a doctor's note to explain his absence, which he claims to have submitted.[2] Though instructed to wait to see a plant doctor, he left the office and did not return to work. On November 13, 2014, FCA US terminated Peoples' employment. The letter

---

[2] The district court stated that Peoples claimed to have provided medical documentation excusing his absence, but that his support in the record is only a partially legible doctor's note he claims to have submitted. The note appears to say that Peoples was seen on October 15, 2014, and that it was recommended that he not work from October 23, 2014 to February 2, 2015, for Post-Traumatic Stress Disorder. Peoples did not cite to any support in the record, however, that he did in fact provide the note to the medical office. Devine testified in his deposition that Peoples did provide a doctor's note to the medical office, but that he did not wait to see a medical plant doctor. Peoples did not bring this fact to the district court's attention or provide any other record support for his compliance.

FCA US states in its appellate brief that Peoples did show the doctor's note to plant medical staff and that he was referred to the plant doctor for evaluation. FCA US further states that Peoples refused to wait for the doctor to arrive and then left, never to return. Peoples was terminated, according to FCA US, "for his failure to provide satisfactory evidence substantiating his absences and his failure to be medically cleared to return to work by the plant doctor." This is pertinent to Peoples' second argument of error, which is addressed further in Part II.B.

stated that he was terminated for failure to "follow[] the reinstatement procedure[,]" as detailed in the 5-day letter.

Peoples filed a second EEOC charge on February 26, 2015, alleging disability discrimination and retaliation that began on October 22, 2014. The EEOC dismissed Peoples' charge and issued him a right to sue letter on August 13, 2015. Peoples filed the underlying complaint on November 14, 2015, alleging disability discrimination, retaliation, and hostile work environment under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). Peoples also alleged negligent infliction of emotional distress under Michigan law. Following discovery, Peoples and FCA US filed cross-motions for partial summary judgment and summary judgment. On May 24, 2017, the district court granted FCA US's motion for summary judgment on all claims and dismissed Peoples' motion for partial summary judgment as moot. On June 7, 2017, Peoples filed a motion for reconsideration, citing "palpable defects" in the May 24, 2017 order. The district court denied the motion, holding, *inter alia*, that Peoples relied upon arguments and evidence he could have submitted at summary judgment. Peoples timely appealed the rulings on the cross-motions for summary judgment and the motion for reconsideration.

II.

We review de novo a district court's grant of summary judgment. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In response, the nonmoving party must present "significant probative evidence" that will reveal that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere existence of a scintilla of evidence in support of the nonmovant's position will not suffice to avoid summary judgment. *Anderson*, 477 U.S. at 252.

We review a district court's evidentiary rulings, including whether evidence is inadmissible hearsay, for abuse of discretion. *United States v. Khalil*, 279 F.3d 358, 363 (6th Cir. 2002). We likewise review a motion for reconsideration for abuse of discretion, unless, as here, the underlying ruling involves a grant of summary judgment. *Indah v. U.S. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011). However, we review a district court's refusal to consider evidence presented for the first time on a motion to reconsider for abuse of discretion, even in this context. *Hayes v. Norfolk S. Corp.,* 25 F. App'x 308, 315 (6th Cir. 2001).

## A. Admissibility of Unsworn Letters

Peoples argues that the district court erred in refusing to admit unsworn letters attached to his motion for summary judgment.[3] He alleges that he wrote the letters to FCA US management, detailing harassment he had suffered and management's failure to properly address his complaints. Peoples repeats his argument below that the unsworn letters are admissible as admissions by a

---

[3] Peoples references three letters in Exhibits A, C, and D, which he argues the district court erred in refusing to admit. FCA US objected to unsworn letters in Exhibits A, D, E, F, and G. The district court only referenced the unsworn letters generally and stated that the court would not consider inadmissible evidence Peoples provided in support of his version of the facts. We construe Exhibits A, C, and D as having been excluded and as the evidence Peoples seeks to have admitted.

party opponent under Federal Rule of Evidence 801(d)(2).[4]  FCA US responds that the district

court properly ruled that the letters are inadmissible hearsay.

After Peoples' moved for partial summary judgment, FCA US objected to Peoples' use of

the letters in his motion.  When a defendant objects, it is improper for the district court to consider

documents not admissible in evidence.  *Alexander*, 576 F.3d at 561.  In *Alexander*, the court

reviewed the district court's exclusion of unsworn documents and found that it did not err in

excluding the unauthenticated or otherwise inadmissible evidence.  *Id.*  Here, the district court

addressed FCA US's objection and found that the letters were inadmissible to support Peoples'

version of the facts under either hearsay exception under Federal Rule of Evidence 801.

Specifically, the court held that the party-opponent admission exception did not apply to Peoples'

submission of the unsworn letters because he is not his own opponent and cannot use 801(d)(2) to

admit his own statements.

Peoples argues that FCA US had placed the same letters in the record, and accordingly,

that Peoples should have been able to rely on them to oppose FCA US's motion for summary

judgment.  The district court did not address the fact that the same letters were included with FCA

US's motion for summary judgment, nor did it reference them in its disposition of Peoples' claims.

FCA US concedes that it included the letters in question with its motion for summary judgment,

stating that they were admitted as statements of a party opponent under Rule 801(d)(2), but argues

that the admission of evidence for one party for one purpose does not automatically translate to

admissibility for another purpose.[5]  Put simply, though FCA US put the letters in the record, and

---

[4] In his reply brief to FCA US's response to his motion for partial summary judgment, Peoples only generally argued that the letters were admissible under Federal Rule of Evidence 801.  Peoples also argues on appeal that the letters are admissible as past recollection recorded under Rule 803(5).  As this is a new argument Peoples could have made before the district court, we do not consider it.  *Michigan Bell Tel. Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002).

[5] FCA US placed the letters in question in the record as exhibits to its own motion for summary judgment and cited them numerous times in its statement of material facts.  FCA US also states that the district court admitted the letters

relied on them, it claims that Peoples should be precluded from relying on them in his own motion for summary judgment. FCA US cites *National Labor Relations Board v. Dayton Motels, Inc.*, 474 F.2d 328 (6th Cir. 1973), to support the idea that Peoples cannot use the documents simply because they were admissible as to FCA US. FCA US misapplies the doctrine referenced in *Dayton Motels*, however, which is also inapposite to this case.[6]

Given that the district court allowed FCA US to rely on the letters for its statement of facts, and the court itself cited some of those facts, we find that it was likely error to exclude the same letters as to Peoples. Nevertheless, we find that this error was harmless. Though FCA US relied on the letters for its own motion for summary judgment, Peoples does not establish how the letters are material to his claims on appeal or how their admission would have changed the outcome of the district court's ruling on any of his claims at summary judgment. First, in ruling on Peoples' discrimination claims under the ADA and the PWDCRA, the district court held that Peoples could not establish pretext regarding his termination in November 2014 following his unexcused failure to appear at work. In so ruling, the court focused on Peoples' lack of compliance with the 5-day letter. Second, in ruling on Peoples' retaliation claims, the court analyzed protected activity in October and November 2014 and determined that Peoples did not present sufficient evidence to rebut FCA US's legitimate, nondiscriminatory reason for its adverse employment actions. Finally, in ruling on Peoples' hostile environment claim, while considering the incidents described in the

---

as to itself as admissions by a party opponent under Rule 801(d)(2), but makes no citation to the record regarding their admission under this rule. A review of the hearing transcript on the cross-motions for summary judgment also does not reveal any discussion of FCA US's use of the letters; the only reference to the letters is FCA US's objection to Peoples' use of them in his motion. FCA US did state at the hearing, however, that the letters are inadmissible and should not be considered by the court "in making this decision on the summary judgments."

[6] The Court in *Dayton Motels* stated, "[t]he doctrine that evidence inadmissible for one purpose can be admitted for another purpose is firmly established in the law." 474 F.2d at 333 n.3 (citation omitted). In other words, evidence admissible for one purpose remains admissible even if it would be inadmissible for another purpose. Courts have referenced this doctrine in the context of clearly identifying to the jury the purpose for which evidence has been introduced at trial, *see, e.g., United States v. Bovee*, 233 F. Supp. 2d 864, 869 (E.D. Mich. 2002), which is inapposite to the facts here. Both FCA US and Peoples cited the letters for the truth of the statements contained therein.

letters, the district court determined that they were "background" to no evidence within the statute of limitations period. On appeal, Peoples fails to demonstrate how the letters detailing incidents in 2011 and 2012 are relevant or necessary to analyzing any of the above-mentioned rulings. Accordingly, we affirm the district court's exclusion of the letters as harmless error.

## B. Motion for Reconsideration

Peoples appeals the district court's denial of his motion for reconsideration on one narrow issue: the court's failure "to recognize the previously submitted employee medical records as evidence that Peoples had complied with the [5-day] letter," which Peoples argues would have negated any legitimate nondiscriminatory reason for his discharge as pretext. We review the decision not to recognize the Employee Medical Record for abuse of discretion. *Hayes,* 25 F. App'x at 315. A district court does not abuse its discretion in refusing to grant a motion for reconsideration when evidence a party wants the court to consider was available at the time summary judgment was decided and would not have affected the outcome. *Tolbert v. Potter*, 206 F. App'x 416, 418 (6th Cir. 2006).

The parties do not dispute that Peoples did submit a doctor's note when he reported to the plant medical office on October 29, 2014. In its ruling on Peoples' motion for reconsideration, the district court acknowledged that a doctor's note was submitted: "Peoples offers his Employee Medical Record, which does appear to show that a note was submitted." Peoples argues that he submitted the Employee Medical Record as an exhibit with his response to FCA US's motion for summary judgment, which the court should have considered. The issue is whether Peoples directed the district court at summary judgment to record support, such as the Employee Medical Record, to establish a genuine issue of material fact regarding whether Peoples provided the doctor's note, and if so, whether he sufficiently complied with the 5-day letter.

Peoples concedes that he did not direct the court to any record support, however. The district court noted in its order denying the motion for reconsideration that Peoples only cited the Employee Medical Record in his response to FCA US's motion for summary judgment to establish other unrelated facts. As mentioned *supra*, Peoples only cited an exhibit of the doctor's note itself at summary judgment to prove that he complied with the 5-day letter. He cited the doctor's note multiple times: in his motion for summary judgment, in response to FCA US's motion for summary judgment, and in his reply brief. But he provided no support for the proposition that he had *actually submitted* the note in accordance with the 5-day letter. This is fatal to Peoples' argument that he created a fact question as to whether termination was pretextual.

Given his citation to the Employee Medical Record at summary judgment, the document was plainly available to Peoples. He failed to bring it to the attention of the court to establish a genuine issue of material fact regarding his compliance with the 5-day letter. On appeal, Peoples states that the district court "did not realize the significance of the Employee Medical Record." Of course, it is not the job of the district court to mine the record for support that a movant had not brought to the court's attention.

Moreover, in reviewing the motions for summary judgment, the district court analyzed in depth whether Peoples' appearance at the plant medical office, without being seen by a doctor, even accomplished the purpose of the 5-day letter, finding that Peoples did not create a fact question regarding his compliance. The district court concluded that Peoples was required to substantiate his absence, and any potential ambiguity in what the letter required (mere appearance versus substantiating his absence to a plant medical doctor) was insufficient to create a genuine issue of material fact about whether Peoples' termination was pretextual. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 561 (6th Cir. 2009); *see also Marshall v. Belmont Cty. Bd. of*

*Com'rs*, 110 F. Supp. 3d 780, 787 (S.D. Ohio 2015), *aff'd* 634 F. App'x 574 (6th Cir. 2016).

Peoples counters on appeal that "course of conduct evidence" suggests that his submission of the note was sufficient, citing two other occasions when he brought in medical reports in response to 5-day letters. He states that FCA US accepted his documentation, continued his disability leave, and did not terminate him. But neither he, nor the Employee Medical Record, describes the circumstances of Peoples' previous medical report submissions in response to 5-day letters. Whether or not he was seen by a plant medical doctor is simply unclear.

On these facts, we do not find that evidence that Peoples presented his doctor's note to the plant medical office would have changed the outcome on summary judgment. Accordingly, we find no abuse of discretion.

## C. Michigan Hostile Work Environment Claim

Lastly, Peoples argues that the district court erred when it granted summary judgment as to his hostile work environment claim under Michigan's PWDCRA. We review this claim de novo. *Echols v. Kalamazoo Pub. Sch.*, 508 F. App'x 392, 394 (6th Cir. 2012).

In order to establish a hostile work environment claim under Michigan law, Peoples must establish the following: 1) that he belongs to a protected group; 2) that he was subjected to communication or conduct on the basis of the protected status; 3) that the communication or conduct was unwelcome; 4) that the unwelcome communication or conduct was intended to or did interfere substantially with his employment or created "an intimidating, hostile, or offensive work environment"; and 5) respondeat superior. *Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 127-28 (6th Cir. 2017); *Downey v. Charleroi Co. Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998). We look to whether a reasonable person would perceive the conduct at issue to be a substantial interference with the plaintiff's employment or if the conduct had the purpose of

creating an intimidating, hostile, or offensive employment environment. *Id.* We are also required to examine the frequency and severity of the conduct, "and whether it unreasonably interferes with an employee's work performance." *Id.* at *6. (quoting *Hussain v. Highgate Hotels, Inc.,* 126 F. App'x 256, 268 (6th Cir. 2015)). Isolated incidents must be "extremely serious" to rise to the level of interference with an employee's work performance. *Id.* (internal citations omitted).

The district court reviewed Peoples' response to FCA US's motion for summary judgment to identify which events were part of his hostile environment claim. From the response, the district court identified the relevant events as the 2011 and 2012 interpersonal altercations, Peoples' placement at the paint shop, and the events surrounding the October 2014 assembly-line shutdown. Peoples argues that the district court erred in concluding that neither the paint shop placement nor the assembly-line shutdown provided admissible evidence of a hostile work environment. Peoples also argues that background from 2011 to 2014 must be considered, during which time he alleges he was assaulted by coworkers, berated for seeking accommodations, and assigned to jobs which violated his work restrictions.

Beginning with Peoples' placement at the paint shop, the district court found that Peoples did not produce any admissible evidence to support the claim, noting that Peoples himself chose the placement at the paint shop. On appeal, Peoples does not counter this finding. He responds that FCA US ignored his suggested accommodation of a placement at another location, the Trenton Engine Plant, and that he chose the paint shop "under duress." Peoples argues that the choices of location he was offered at the paint shop or the Warren Truck Assembly Plant were both problematic because he would continue to be exposed to coworkers who had harassed him. The district court concluded that the Warren Plant was a facility other than the SHAP facility, and that Peoples' placement there would have complied with the IME's recommendation. Peoples does

not contradict this. On appeal, he remarks in passing that the same employees moved between the SHAP and Warren plants, apparently intimating that this might have subjected him to continued harassment. But again, he offers no evidence that the placement contributed to a hostile work environment and does not articulate how the district court erred. The facts of his placement plainly do not suggest the creation of a hostile work environment or an extremely serious incident that interfered with his work performance. The IME recommended that Peoples be placed at another facility. To that end, another facility—the Warren Plant—was offered, and Peoples did not choose it. Accordingly, the district court did not err in finding no admissible evidence that Peoples' placement at the paint shop contributed to a hostile work environment based on his disability.

Peoples also makes no substantiated argument to counter the district court's finding regarding the October 2014 assembly-line shutdown. The district court held that the comments Peoples cited as creating a hostile environment gave no indication that any remarks were made in connection with his disability. Rather, the remarks were consistent with those made to an employee whose work performance is unsatisfactory. Peoples testified:

> [My supervisor] demanded that I do the job on line although I had never been trained on line to do the job. And I explained to Amen, "I do not know the job, Amen. I cannot bend to complete the job, Amen. And if you put me on line, the line is gonna go down, because everyone over here knows I don't know this job."

R. 37-2 at PageID #729. As the district court noted, Michigan law requires that comments offered in support of a hostile work environment claim must pertain to the protected characteristic, here Peoples' disability. *Watz v. Wal-Mart Stores East, LP*, No. 320883, 2015 WL 2329076, at \*4 (Mich. Ct. App. 2015)*; see also Corley v. Detroit Bd. of Educ.*, 681 N.W.2d 342, 346 (Mich. 2004) (holding that a hostile work environment sexual harassment claim required that the alleged conduct or communication at issue was "of a sexual nature"). Peoples testified that his supervisor demanded that he perform his job. When asked if he had otherwise been threatened with

termination, Peoples reported that he had not. When asked if any other conduct constituted a hostile work environment, he reported none.

On appeal, Peoples makes conclusory assertions that a supervisor's remarks, in which he was told he would suffer disciplinary action if he did not comply with her instructions, were motivated by hostility toward Peoples because the supervisor had been briefed regarding his previous requests for rotations and accommodations. Beyond being unsupported with any citation to the record, these alleged statements also show no relation to Peoples' disability. His subjective belief that statements made to him regarding his performance were based on his disability status is not enough to establish discrimination. *Watz*, 2015 WL 2320976, at *4. Documentary evidence must substantiate that belief. *Id.* The facts of this incident do not provide such substantiation.

Peoples lastly urges that events in 2011 and 2012 provide important background context for his hostile work environment claim. He argues that he was assaulted by coworkers, that management failed to discipline his abusers, that he was berated for seeking accommodations, and that he was assigned jobs that violated his restrictions. The district court concluded that the 2011 and 2012 altercations were unsupportive of Peoples' hostile work environment claim. First, the district court observed that the altercations are themselves time-barred under the PWDCRA. *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646 (Mich. 2005). But even if not time-barred, the district court also concluded that the altercations did not qualify as "background" supportive of a hostile work environment claim, because the above-mentioned events fail to pose a question of fact upon which any "background" could add evidentiary support. Furthermore, the district court found that the assaults were temporally removed from the hostile work environment claim, which reduced their value as background evidence.

- 14 -

The 2011 and 2012 incidents are indeed temporally removed from the hostile environment alleged, which begins in 2013. Regarding the temporal difference, the district court cited a case from this court which involved a temporal break of 10 years. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009). *Barrett*, in turn, relied on a case in which the Supreme Court held that statements made by the same actors outside the 300-day filing period were still part of an actionable hostile environment claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002). It may be questionable whether the assaults are temporally too far removed, as they are not nearly as far removed as the events in *Barrett*, but this is mostly beside the point—while background circumstances can be supportive, Peoples does not point to an event within the filing period that suggests a hostile work environment for which any background circumstances could possibly provide support.

Given that the incidents Peoples describes do not satisfy the test for a hostile work environment, Peoples' argument boils down to an objection to remarks made to him about his work performance. Though understandably upsetting, such feedback is not illegal. *Plautz v. Potter*, 156 F. App'x 812, 819 (6th Cir. 2005). Accordingly, we affirm the district court's grant of summary judgment to FCA US on Peoples' claim for hostile work environment under Michigan law.

III.

For the reasons set forth above, we AFFIRM the district court.