NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0210n.06

Case No. 25-1543

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 11, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| BERNARD KEENAN, | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| O'REILLY AUTO ENTERPRISES, | ) | MICHIGAN |
| Defendant-Appellee. | ) | |
|  | ) | OPINION |

Before: SUTTON, Chief Judge; GRIFFIN and NALBANDIAN, Circuit Judges.

SUTTON, C.J., delivered the opinion of the court in which NALBANDIAN, J., concurred. GRIFFIN, J. (pp. 7–12), delivered a separate dissenting opinion.

SUTTON, Chief Judge. After Bernard Keenan slipped and fell on some oil in the parking lot of an O'Reilly Auto Parts store, he brought a premises-liability claim against O'Reilly. Because O'Reilly did not have notice of the hazard before Keenan fell, the district court granted summary judgment to O'Reilly. We agree and affirm.

I.

Keenan drove his truck into an O'Reilly store's parking lot in August 2023. When he stepped out of his car, he thought that he "might have stepped in some [] oil" in the parking lot. R.34 at 35. Keenan walked into the store and noticed that his foot "slipped a little bit" "on the tile" inside, so he "wiped" his shoe on a rug as he entered. R.34 at 37. Keenan apologized to the

two O'Reilly employees working in the store because "I got a mess in your garage." R.34 at 37. During his deposition, Keenan at times indicated that he also may have mentioned "oil" in the parking lot while inside the store. R.34 at 36–38. But he then clarified that, "to [his] knowledge," he did not "say anything at that time about oil in the parking lot." R.34 at 42.

Keenan found the car part he was looking for, paid for it, and returned to the parking lot. While stepping onto his truck's running board, his other foot slipped on the oil in the parking lot. Keenan fell backwards, hitting his back on the pavement. He went back inside the store to tell the O'Reilly employees about the fall. After that, he drove to a hospital where he complained of pain in his tailbone, shoulder, and neck.

Keenan sued O'Reilly in Michigan court under a premises-liability theory for failing to keep the parking lot clear of hazards. O'Reilly removed the lawsuit to federal district court based on diversity jurisdiction. The district court noted Keenan's deposition statement that, "to [his] knowledge," he did not "say anything at that time about oil in the parking lot" and another similar statement. R.34 at 42. It then concluded that Keenan failed to create a genuine factual dispute about whether O'Reilly had actual or constructive notice of the oil spill before he slipped on it and granted summary judgment to O'Reilly.

II.

Michigan premises-liability law requires landowners to show invitees, like Keenan, "reasonable care to protect [them] from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed v. F & E Oil, Inc.*, 1 N.W.3d 44, 52 (Mich. 2023) (quotation omitted). To establish that a landowner breached this duty, a plaintiff must demonstrate that the landowner had "actual or constructive notice" of the danger and failed to act—that the owner in other words "knew or should have known" about the danger but did nothing. *Lowrey v. LMPS &*

*LMPJ, Inc.*, 890 N.W.2d 344, 349–50 & n.2 (Mich. 2016). Actual notice involves direct knowledge. *Id.* Constructive notice requires a "hazard [that] was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Id.* at 350.

To overcome O'Reilly's motion for summary judgment, Keenan had to show that, when viewing the evidence in the light most favorable to him, the "record taken as a whole" could "lead a rational trier of fact to find" for him. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Self-contradictory testimony, by itself, fails to establish a genuine factual dispute. *E.g.*, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 937 (6th Cir. 2000); *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 449 (6th Cir. 2017).

## A.

Keenan failed to demonstrate that O'Reilly had actual or constructive notice of the oil spill on which he slipped.

Start with actual notice. Keenan does not point to any evidence that O'Reilly employees knew about a danger in the parking lot before he fell. No evidence shows that O'Reilly knew about the oil because, say, the store itself created the spill. To the contrary, Keenan's testimony suggests that someone else—perhaps an adjacent car—caused the spill. Nor does any evidence indicate that O'Reilly employees discovered the spill. The two employees on duty denied knowing about the oil until Keenan fell.

Keenan likewise failed to show that he told the O'Reilly employees that there was a pool of oil in the parking lot. Keenan's initial narrative of the incident did not mention anything about "oil" or any other danger in the parking lot when he entered the store. Keenan testified that he apologized to the employees for making a "mess" on the store's tile floor and entry rug when he

walked in the store. R.34 at 37. That, at best, provided notice about a potential slipping hazard inside the store. Keenan did not connect that "mess" to a danger in the parking lot or anywhere else.

Keenan initially testified in his deposition, to be sure, that he "told [the O'Reilly employees] there was oil out there in the parking lot." R.34 at 36; *see also id.* at 37 ("There's oil out there."). But then Keenan backtracked. When asked whether he told the O'Reilly employees "during that first trip that there was oil in the parking lot," Keenan answered, "To the best of my knowledge, I don't remember." R.34 at 38. Leaving no doubt, Keenan clarified again that he never mentioned oil in the parking lot. When asked, "Did you say anything at that time about oil in the parking lot?", he responded, "Not to my knowledge." R.34 at 42. Because Keenan points to nothing but self-contradictory testimony to show he ever mentioned "oil" or some other danger existed in the parking lot, he failed to create a genuine factual dispute. *See Plant*, 212 F.3d at 937; *Bush*, 683 F. App'x at 449; *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 776–77 (6th Cir. 2001).

Constructive notice is no more helpful. Keenan does not meaningfully contest the district court's conclusion that he failed to show that O'Reilly had any reason to know about the oil spill in the parking lot before he slipped on it. *See* Appellant's Br. 16. Keenan, as a result, forfeited this path to demonstrating notice. His decision not to press this point makes sense because, even if he had made the argument, the evidence would fail to establish constructive notice. *See, e.g.*, *Bragg v. Daimler Chrysler*, No. 290371, 2010 WL 3604428, at *6 (Mich. Ct. App. Sept. 16, 2010) (per curiam). No testimony indicates that the oil remained on the asphalt for a meaningful period of time before Keenan slipped on it. Keenan in fact described the spill as "fresh[]" and guessed that it had been there for "an hour" or "even less than that." R.34 at 41.

B.

Keenan's appellate arguments do not rescue his claims. While he invokes his initial statement that he mentioned "oil" in the parking lot when he walked into the store, he later denied ever saying that to the O'Reilly employees. "[S]uch an inherently contradictory statement" does not "constitute[] the 'significant probative evidence tending to support the complaint' required to withstand a motion for summary judgment." *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). We have "repeatedly held that," because "no reasonable person would undertake the suspension of disbelief necessary to credit the allegations made in" self-contradictory testimony, "a plaintiff's internally contradictory deposition testimony cannot, by itself, create a genuine dispute of material fact." *Bush*, 683 F. App'x at 449 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)); *see Plant*, 212 F.3d at 937; *Campbell*, 238 F.3d at 776–77; *Doe v. Sullivan County*, 956 F.2d 545, 551 (6th Cir. 1992); *Gearhart v. E. I. du Pont de Nemours & Co.*, 833 F. App'x 416, 423 (6th Cir. 2020). "[T]estimony [that] is contradictory on [the relevant] point," as a result, "is not enough to establish" an element of a claim. *Hayes v. Norfolk S. Corp.*, 25 F. App'x 308, 314 (6th Cir. 2001).

Keenan insists that one of his denials about telling O'Reilly employees about the oil does not count because it was inadmissible in view of the fact that he addressed the point earlier in the deposition. This argument has at least three flaws. First, Keenan forfeited the argument by failing to raise it in the district court. *See* R.34. Second, he challenges only one of his denials on appeal, mentioning only his attorney's objection to the question that he answered by saying he "do[es]n't remember" mentioning oil in the parking lot. That leaves unchallenged his more damaging admission that "to [his] knowledge" he never told the employees about the oil. R.34 at 42; *see*

Fed. R. Civ. P. 32(d)(3)(B). Third, even if Keenan had preserved this argument and even if he had objected to each question, he would face a steep, uphill battle in attempting to show that seeking clarification of an inconsistent general narrative with a specific follow-up question violates any of the Federal Rules of Evidence.

That leaves Keenan's lukewarm reliance on his testimony that he apologized to an O'Reilly employee for making a mess when he arrived in the store. Keenan barely attempts to develop an argument based on these statements. And for good reason. He testified that he told the employees, "'I got a mess in your garage (sic),' you know, because I noticed when I went to go on the tile in there, my foot slipped a little bit, and I wiped it on . . . part of their rug." R.34 at 37. He did not connect this "mess" to a hazard in the parking lot. Statements about a "garage" do not provide notice about the parking lot.

In fact, the statement refers to the inside of the auto parts store. After Keenan said that he told O'Reilly employees, "You got something on your floor," he was asked, "[W]ere you talking to them about the floor, or were you talking to them about the parking lot?" R.34 at 38. He answered: "The floor. I said, 'If I made a mess in here, I'm very sorry.'" R.34 at 38. Keenan's testimony conveys that he told employees that he had gotten some "mess" on the carpet inside the store, not that a dangerous oil spill existed in the parking lot. That Keenan had several further chances to talk about what he told the employees and used them to clarify that he never mentioned oil in the parking lot reinforces, indeed cements, this conclusion.

We affirm.

6

GRIFFIN, Circuit Judge, dissenting.

In deciding motions for summary judgment, we, and the district court, must construe the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Codrington v. Dolak*, 142 F.4th 884, 890 (6th Cir. 2025). Because in my view the majority opinion fails to construe the record in the light most favorable to eighty-year-old plaintiff Bernard Keenan, I respectfully dissent.

I.

This is not a complicated case. Keenan slipped in a pool of oil in defendant O'Reilly Auto Enterprises, LLC's parking lot, severely injuring himself. At the time, Keenan was an invitee of O'Reilly. O'Reilly therefore owed to Keenan a duty under Michigan law to exercise reasonable care regarding hazardous conditions for which it had actual or constructive knowledge. *See Lowrey v. LPMS & LMPJ, Inc.*, 890 N.W.2d 344, 348–49 (Mich. 2016). Keenan filed suit, alleging that O'Reilly breached its duty by failing to use ordinary care in maintaining the safety of its premises.

Because this case was largely decided based upon Keenan's deposition, it is necessary to recite Keenan's relevant adverse-party testimony at length. Early in the deposition, O'Reilly's counsel asked Keenan to describe the events leading up to his injuries:

> [I] pulled up. And got out of my truck, and there was a car parked beside me. A guy was messing with it. I walked in. I might have stepped in some of the oil at that time. And I went in and ordered the [engine] mount and paid for it. Come back out. The car that I was parked by was gone. And I wasn't looking down at the ground walking. I was just walking towards my truck when I walked into the oil. I opened my door to get in. I stepped up on my running board and slipped and fell backwards.

O'Reilly's counsel asked Keenan to explain again what happened when he arrived at the store. Keenan obliged:

> I put my turn signal on, pulled in -- in there, got out of my truck, walked in. And I didn't see my footprints where I walked in the oil. <u>I told them there was oil out there in the parking lot and picked up my purchase that I needed.</u> When I walked out, bam, I fell and then went back in and told them.

R. 34, PID 208 (emphasis added). Counsel then asked him if he saw anything on the ground as he exited his truck:

> I didn't look straight down to walk. I looked straight ahead. <u>But I did step in stuff,</u> because there's some footprints in my pictures. <u>I walked in and told them, and I says, "I got a mess in your garage (sic)," you know, because I noticed when I went to go on the tile in there,</u> my foot slipped a little bit, and I wiped it on their -- on the part of their rug.

R. 34, PID 209 (emphasis added). Inquiring further, O'Reilly's counsel asked Keenan if he had slipped at any point when he walked from his truck and entered the store.

> A: Not till I got inside where my feet -- I could feel my left foot try to move a little bit, because the rug was further up than what it was supposed to be by the doors. And I walked up there, and <u>I wiped it. And I said, "I got a mess all over. There's oil out there." And that's all I said. Them two young guys didn't pay attention until I paid for my part.</u> When I walked out, I slipped in that thing and fell.
>
> [. . .]
>
> Q: Okay. So from the time that you stepped out of your truck to the time you walked in the entrance doors, did you notice anything on your shoes during that point of time?
>
> A: Not really, no.
>
> Q: So when you first walked in the doors and you're inside the store, that's when you feel your left foot slip a little bit?
>
> A: Yes, ma'am. To my knowledge, that's what I -- that's why I fell.

R. 34, PID 209 (emphasis added).

8

Counsel yet again asked Keenan what happened:

Q:  [Y]ou said you walked in the store, your left foot slipped a little bit, and you told them, "I got a mess all over"?

A:  I said, "<u>I'm sorry if I did make a mess,</u>" you know, that, "<u>There is some oil,</u>" I guess -- looked like oil to me.  But when I walked -- that was the time when I come back in the second time, that's where the big puddle of oil, I mean, it was big as you seen from the pictures.

R. 34, PID 210 (emphasis added).

Counsel for O'Reilly then asked Keenan once more if he saw oil when he exited his truck and entered the store.

A:  No.  I didn't look -- I don't look at the ground all the time when I'm walking.

Q:  And I want to make sure I have your words as best you can remember them. As best as you can recall, what exactly did you say to the employees when you walked into O'Reilly?

A:  I walked in.  I said I wanted to buy a motor mount . . . .  I paid him for it. Walked out . . . .  And I went to open the door, and I went -- and that's when I fell. And after I fell, I got up and I told them inside.  And that's when the guy said, well, being smart, he said, "We'll go out there with a chemical and the Oil-Dri."

[. . .]

Q:  All right. But I want to talk specifically about the conversation you had when you were inside the store the first time.

A:  The first time.  <u>When I walked in, to my knowledge, I told them, -- I said, "You got something on your floor."</u>  And I wiped on the rug, and I walked up to the counter.  I said, "I want to order a motor mount."  Couple minutes went through and he got it.  He told me how much it was.  And I said, "I'm very sorry if I made a mess," or whatever, paid for it, and I walked out.

Q:  So the first time you were in the store did you reference the parking lot or did you mention the floor?

A:  Did I what, now, ma'am?

Q:  The first time you were in O'Reilly, before you went back outside and you were talking to the employee about your foot and being a mess, were you talking to them about the floor, or were you talking to them about the parking lot?

A:  The floor.  I said, "If I made a mess in here, I'm very sorry." And he got the motor mount for me, handed it to me. I paid for it, turned around and walked out the door.  And that's when all this stuff happened.

Q: Did you tell them during that first trip that there was oil in the parking lot?

A: To the best of my knowledge, I don't remember.

R. 34, PID 210 (emphasis added). Finally, Keenan was asked if he said anything about "oil" in his warning of the "mess":

Q: You told the two employees that there's something on their floor, and that you're sorry for making a mess?

A: <u>Yes, I did tell the two boys that.</u>

Q: <u>Did you say anything at that time about the oil</u> in the parking lot?

A: Not to my knowledge.

R. 34, PID 214 (emphasis added). I turn now to what Keenan's testimony shows.

## II.

Construing this testimony in the light most favorable to Keenan, as we must, there is a genuine issue of material fact regarding whether Keenan gave O'Reilly notice of a hazardous condition in the parking lot before his fall. And, as relevant here, that is all he needed to do to survive summary judgment. *See Hampton v. Waste Mgmt. of Mich., Inc.*, 601 N.W.2d 172, 176 (Mich. Ct. App. 1999) (per curiam). Although he variously called the hazardous condition "oil" or "a mess," this is not dispositive; his message relayed that a hazardous condition in the parking lot required O'Reilly's attention, O'Reilly did nothing about it, and Keenan slipped and fell because of that hazardous condition, severely injuring himself.

The majority casts all this aside because Keenan's deposition testimony regarding "oil" was internally contradictory. Although it is true that we will set aside testimony that is "self-contradictory and logically suspect," *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 937 (6th Cir. 2000), Keenan's testimony, on the whole, cannot be described as such.

Compare it to *Plant*. There, the plaintiff alleged a disability-discrimination claim against his employer. *Id.* at 936. To make out a successful claim, he had to produce sufficient evidence demonstrating he was disabled. The plaintiff testified that he was actually attributing his inability to work to a disability he suffered *after* he was fired. *Id.* at 937. And he went on to testify that he had continued working after his termination. *Id.* Thus, we concluded that he had "not produced sufficient evidence from which a factfinder could conclude that he was disabled" during the period at issue because his "self-contradictory and logically suspect testimony [was] simply not sufficient to support a jury finding that he was disabled." *Id.* To put it simply, his own testimony negated a necessary element of his claim.

Or look to *Bush v. Compass Group USA, Inc.*, 683 F. App'x 440, 449 (6th Cir. 2017). Like the plaintiff in *Plant*, the plaintiff in *Bush* had to put forth sufficient evidence showing he was disabled. *Id.* During his deposition, the plaintiff consistently testified that he was unable to perform the physical work his job demanded. *Id.* at 447. But the plaintiff's later affidavit asserted the complete opposite: he could "perform the duties of [the job], as described in the written job description." *Id.* at 448. We explained that such "directly contradictory" statements need not be considered, nor could they create a genuine dispute. *Id.*

This is not the case here. Kennan's testimony adequately demonstrated that he had put O'Reilly on notice of a hazardous condition in the parking lot. To be sure, he variously called that condition different things—an oil spill or more simply a mess—but in any case, he told O'Reilly employees about a hazardous condition, regardless of the specific word he used to notice the hazardous condition before his fall. In particular, Keenan affirmatively testified that he provided O'Reilly notice of "a mess in your garage," "a mess all over," and "oil out there." Could his

11

deposition testimony have been clearer and more focused? Certainly. But his testimony does not altogether negate a necessary element of his premises-liability claim.

At a minimum, his testimony creates a genuine issue of material fact of whether he provided notice of a hazardous condition on the premises. This holds regardless of the specific noun used to identify the dangerous condition. That is so because each instance of notice of the hazardous condition triggered O'Reilly's duty to protect him from it. And it also holds notwithstanding the fact that Keenan was later unsure of whether he specified "oil" as the dangerous condition warned about. That is so because his testimony was consistent that he warned O'Reilly—via his actions and his words—of a dangerous condition on its premises. At base, Keenan's testimony does not rise to the level of self-contradictory and logically suspect testimony that we have rejected before.

In my view, the decision by the district court—and affirmed by the majority—to grant summary judgment in favor of O'Reilly is "inconsistent with the . . . obligation to view the evidence in the light most favorable to" Keenan. *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006). Accordingly, I would reverse and remand for further proceedings.